Gray v. United States Savings & Loan Company.

CASE 104—ACTION BY THE UNITED STATES SAVINGS & LOAN COM-
PANY AGAINST GEORGE GRAY ON NOTES, AND TO ENFORCE MORT-
GAGE LIEN.—DEC. 3.

# Gray v. United States Savings & Loan Co.

APPEAL FROM CLARK CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   AFFIRMED.

BUILDING AND LOAN ASSOCIATIONS—COMPROMISE WITH BORROWING
MEMBER—PLEADINGS—ADMISSIONS—DENIALS.

Held:  1. In the absence of a rejoinder, all the well-pleaded facts
in the reply are taken as true, and, in the absence of evidence,
the allegations in the answer which are denied by the reply
are taken as untrue.

2. A contract between a Minnesota building association and a bor-
rowing member by which they settled the matter of usury con-
tained in the debt, and agreed on the amount due, was valid,
where the association in good faith claimed that the debt was
not tainted with usury under the laws of Minnesota, which
should govern, and several circuit courts of Kentucky had so
decided, and where the borrowing member contended that the
debt was tainted with usury, and was about to prosecute an ap-
peal to the Court of Appeals for the determination by that
court of that question, and which that court subsequently set-
tled against the contention of the association.

D. L. PENDLETON AND HAZELRIGG & CHENAULT, FOR APPEL-
LANT.

BECKNER & JOUETT, FOR APPELLEE.
     (No briefs in the record.)

OPINION OF THE COURT BY JUDGE BARKER—AFFIRMING.

In the year 1894, the appellee, the United States Sav-
ings & Loan Company, which was a going concern, with its
head office at St. Paul, Minn., instituted an action against
appellant to recover judgment against him on two notes—
one for $500, and the other for $400—and to enforce a

mortgage lien by which their payment was secured. On the
24th day of May, 1894, a judgment was entered as prayed
for in the petition. The judgment rendered, with the ac-
crued interest and costs, amounted, in round numbers, to
$1,300. Appellant, although summoned, made no defense to
this action, but on the contrary, his counsel consented that it
should be entered. Afterwards, on the 27th day of August,
1894, he entered into an agreement with appellee, by which,
in discharge of the judgment against him, he executed and
delivered to it his note, with Betty Gray as surety, for $1,050,
payable on or before June 1, 1895; and, to secure its pay-
ment, they executed a mortgage on property belonging to
them in Winchester, Ky.    There were, after this com-
promise was made, a number of payments, the aggregate
amount of which is in dispute, but which appellee admits to
have been as much as $271.50. Appellant failed to pay any
further upon his note, and this action was instituted by ap-
pellee to recover judgment for the balance due thereon, and
to enforce the mortgage lien given to secure it. To this ac-
tion appellant filed an answer, alleging much larger payments
on the note than the amount of the credits given in the pe-
tition, and that the claim against him contained a large
amount of usury, and also charging fraud and covin in the
obtention of the original judgment against him, and in the
compromise by which he executed and delivered his note for
$1,050 in its discharge. To this answer appellee filed a reply,
controverting all of its material allegations of fact inconsist-
ent with those of the petition, and then affirmatively setting
forth the following state of facts: That, after the rendition
of the original judgment against appellant, he was about to
prosecute an appeal therefrom to the Court of Appeals, con-
tending that the judgment against him embraced a large
amount of usury; that at that time appellee contended that

it was a Minnesota corporation, and that its contract with
appellant was a Minnesota contract; that, under and by vir-
tue of the laws of Minnesota, it was valid and binding, and
that the amount adjudged in its favor against appellant was
properly recoverable under the contract, as construed and
enforced by the laws of the State of Minnesota; that the ques-
tion of the validity of this contract had not at that time been
decided by this court, but, on the contrary, had been decided
by the circuit court of Clark county, and various other cir-
cuit courts throughout the State of Kentucky, to be a Minne-
sota contract, and enforceable as such here; that this con-
troversy between appellant and appellee was bona fide, and
involved the question of whether or not the judgment in fa-
vor of appellee contained usury; that, with this condition of
affairs existing, appellee and appellant, in person, and with
the aid and guidance of his attorney, Rodney Haggard, an
able and efficient counselor, in good faith, and for the pur-
pose of settling and adjusting the differences between the
parties, entered into the contract by which the note sued on
was executed and delivered by appellant to appellee; that this
contract of settlement and compromise was made in the of-
fice of Rodney Haggard, appellant's counsel, with his aid,
assistance, and advice, both he and appellant being present
at the time; that all of its terms were fully understood, ap-
proved and urged by appellant in person and by his counsel;
that it was made and accepted in good faith by appellee, who
at once stopped the sale of the property which was advertised
for that day, and thereafter, in good faith, abandoned and
released all claims of any sort under the judgment. No re-
joinder was made to this pleading, and no proof adduced
by the appellant to establish the allegations of payment and
fraud, which were placed in issue by the denials of the re-

ply. The case being submitted on the pleadings, a judgment was rendered as prayed for in the petition.

In the absence of a rejoinder, all of the well-pleaded allegations of fact in the reply are to be taken as true; and, in the absence of evidence to support them, all of the allegations of payment and fraud in the answer which were controverted by the reply must be taken as untrue. The question, then, for adjudication, is whether or not the compromise made between the parties litigant, as set forth in the reply, can be upheld. There is a wide difference between a compromise by which a debtor agrees to pay in settlement of his debt a less amount of usury than that claimed by the creditor, where there is no dispute between the parties as to the usurious character of their contract, and a compromise by a debtor of a contract which he claims contains usury, but the usurious nature of which the creditor in good faith disputes.

The crucial question in such matters is always whether there is in good faith a controversy between the parties. The line between these two classes of cases sometimes becomes exceedingly fine, but it is none the less real for that reason. In the case of Taylor v. Patrick, 1 Bibb, 168, it is said: "The compromise of a doubtful right is a good consideration to found a contract on, and it is immaterial on whose side the right ultimately turns out to be, as it must be on one side or the other, because there can be but one good right to the same piece of property." In the case of Fisher v. May's Heirs, 2 Bibb, 448, 5 Am. Dec., 626, in which one party undertook to dispute and uproot a settlement made with the other, for reasons set forth, the court said: "This is certainly no ground for relief. There can be but one superior and equitable right. If, therefore, the solemn compromise of the parties about property of doubtful title is made to depend on the question whether the parties have so settled their dis-

pute as the law would have done, then it may be truly said
that a compromise is an unavailing and idle act, which ques-
tions even the power of the parties to bind themselves." In
the case of Creutz v. Heil, 89 Ky., 429, 11 R., 652, 12 S. W.,
926, the following admirable rule governing the question under
discussion was laid down: "It seems that the inquiry is
whether the party relying on the agreement had reasonable
and proper cause for believing that the question was doubt-
ful, and that the right might ultimately prove to be with him.
In other words, it is sufficient that there was an honest claim
on his part, asserted without fraud, and that there was a
real ground for dispute.     If the point is so clear that it can
only be answered in one way, the compromise would be in-
valid, as wanting a consideration to uphold it.     The adequacy
of the consideration can not be inquired into, but the want
of any consideration whatever may be inquired into.     The
verdict of a jury or the decision of a court depends in a
greater or less degree upon the human understanding as to
what is right and equitable in a given state of case; but when
the given state of case has received such judicial interpre-
tation as to admit of no question, supposing that the judicial
mind will continue to run in the same channel (and such
supposition should always be indulged in), then there can
arise, in a legal and equitable sense, no consideration for a
compromise of such matter.     It is only in reference to such
matters as counsel learned in the law or courts might differ,
although the right ultimately turns out to be wholly on one
side, that constitutes a valid consideration for compromis-
ing such matters.     The question of such consideration can
not be measured; hence its adequacy will not be inquired
into."

The admitted facts show that, at the time the compromise
under consideration was entered into, there was a bona fide

controversy between the parties litigant; that at that time
the contract between them had been upheld by the circuit court
in which it was then depending as valid and binding; that
the other circuit courts had so held, and this court at that
time had made no ruling adverse to that position.    It may
be said, therefore, that there was a real controversy between
the parties, the ultimate outcome of which, if carried to this
court, could not then be known.    This was evidently believed
by the counsel for appellant, who was a man of high rank
and standing in his profession, or he would not have advised
his client to make the compromise. These is no more reason
why a contract as to the usurious nature of which there is a
genuine dispute should not be compromised, than if it related
to any other question of disputed legal right.    In the case
of Cynthiana Loan & Building Association v. Florence (107
Ky., 636; 21 R., 1403) ; 55 S. W., 207, where there was a dis-
pute between the borrowing member and the corporation,
and they had settled and adjusted their differences, the court,
in upholding the settlement, said: "The parties, to avoid
litigation, had a clear right to agree on what this amount was;
and a compromise of such matter, if made, as alleged in the
answer, fairly, deliberately, and with the advice of counsel,
can not be disregarded.    By the arrangement appellees not
only had their note canceled and the mortgage on the land
released, but got rid of all liability as stockholders in the as-
sociation, and terminated all connection with it, or liability
to it or to its creditors thereafter.    The law delights to up-
hold compromises, because they keep down strife and prevent
litigation.    The reasons which allow usury paid upon a com-
promise to be recovered have no application to a compromise,
made in good faith, of other matters not tainted with
usury, and for which a legal liability existed." In the
case of United States Building & Loan Association v. Denny,

(23 R., 2109), 66 S. W., 662, it was said:    "The court is
of the opinion that the contract between the asso-
ciation and its borrowing member, by which they settled the
matter of usury contained in its debt against him, and in
which they agreed upon the price to be paid by the asso-
ciation for appellee's stock in it, and allowed as a credit upon
the debt, was a meeting of the minds of the parties compe-
tent to contract about those matters.  The controversy exist-
ing between them, and the problematical value of the stock,
were sufficient consideration to support the agreement.  It
was a contract in every essential.  It was such a contract
that had the value of the stock of appellee been greater than
was allowed in his settlement, he would have been compelled
to accept the settlement, and to have specifically performed
it."   In the case of Latham v. Glasscock, 10 Ky. Law Rep.,
77, in an opinion by the superior court, it was said:  "As the
issue was made as to the usury in the note sued on, and the
parties, after the issues were joined, compromised the mat-
ters involved in the action, whereby it was agreed that the
judgment should be rendered for plaintiff for a certain amount
which was considerably less than the amount claimed, and
the judgment was so entered, this judgment as effectually dis-
posed of the question of usury as if the court had, upon the
trial of the issues joined, rendered judgment for the same
amount."   The case of Cynthiana Building & Savings Asso-
ciation v. Ecklar (23 R., 1467), 65 S. W., 335, is not incon-
sistent with the cases here cited.  In that case there was no
dispute on the question of usury.  It was a mere compromise,
which had the effect of causing the creditors to remit a part
of the usury, and the debtor agreeing to pay the balance, to-
gether with the principal debt.    There is no magic in the
word "usury" which forbids a question as to its existence
being settled between the parties, the same as any other dis-

puted and doubtful claim.    In the case at bar, at the time
the compromise was made, it was doubtful as to what would
be the ultimate outcome of the claim on the part of the corpor-
ation that its contract was a Minnesota contract, valid and
binding by the laws of that State, and which should be valid
and binding here.

This court had made no ruling upon that question,
and at that time the judicial utterance of the circuit court
was in favor of the contention of appellee.    Subsequently
this court has settled the question adversely to the contention
of appellee, but this does not render nugatory the settlement
between the parties.    There is no more reason now to upset
the settlement, in favor of appellant, because this court has
finally decided adversely to the claim of the appellee, than
there would have been to upset it in favor of the appellee,
so as to permit it to collect the full amount of the judgment
originally rendered, if this court had adjudged the contract
to have been a Minnesota contract, enforceable by the laws of
this State.    As has been well said, it does not matter upon
which side the right ultimately appears to have been, if at
the time the settlement was made there was a bona fide con-
troversy between the parties, about which lawyers and courts
might differ.

For these reasons, the judgment of the circuit court is
affirmed.