[No. 10553.  *En Banc.*  May 6, 1913.]

## P. J. KNIGHT et al., *Respondents,* v. AMERICAN INVESTMENT & IMPROVEMENT COMPANY et al., *Appellants.*[1]

USURY—CONSIDERATION — EXTENSION OF TIME — UNLAWFUL EXAC-
TION. A contract to stay proceedings in a mortgage foreclosure, and
extend the time for payment to one year and give partial releases of
the property, is an evasion of the usury statute and void, where it
was provided that the mortgagor should pay therefor $550 per month
for each and every month the mortgages should remain unpaid, not
exceeding $5,000 in all, which was almost treble the lawful interest;
since the principal consideration of the contract was the extension of
time of payment and tainted the entire transaction.

SAME—CONSIDERATION—FORBEARANCE. The fact that the foreclo-
sure suit was ready for trial and plaintiffs lost their place on the
calendar was but an incident to the forbearance, and not a lawful
consideration for the exaction.

SAME—CONDITIONAL CONTRACT—RISK OR LOSS. The fact that the
contract provided that it "shall be void" in case the mortgaged prop-
erty was ordered sold by a receiver in a case then pending, does not
render the contract lawful, since the contingency did not put in peril
any part of the principal or interest that could be lawfully reserved.

SAME—PERSONAL DEFENSE—PRIVITY. Usury exacted from a cor-
poration may be set up by a stockholder holding nine-tenths of the
capital stock, where he had signed the usurious contract and stood
in the relation of a surety, and was, in the broad sense, a privy.

CROW, C. J., MORRIS, and MOUNT, JJ., dissent.

Appeal from a judgment of the superior court for King
county, Dykeman, J., entered December 11, 1911, in favor
of the plaintiffs, after a trial on the merits before the court
without a jury, in an action on contract. Reversed.

*Munn & Brackett,* for appellants.

*G. E. Steiner* and *Walter B. Beals,* for respondents.

GOSE, J.—On the 18th day of June, 1907, the plaintiffs,
as first parties and the defendants, as second parties, entered
into an agreement in writing, reciting that the plaintiffs had

[1]Reported in 132 Pac. 219.

brought an action, which was then pending, to foreclose two mortgages upon certain real estate which was specifically described; that the mortgages were drawn for $15,999 and $3,-000 respectively; that other parties had brought actions affecting the defendants, the mortgagors, and the property covered by the mortgage, the pendency of which made the sale of property and the payment of the indebtedness impracticable. The agreement provides further that:

"Whereas, it is now desired (1) to stay proceedings in the foreclosure of the aforesaid mortgages, and (2) to stay and terminate all other litigation affecting said lands, and to deed Lakeside City to a trustee absolutely, with full power to sell said lands and apply the proceeds of the sale of said lands to the payment of said mortgages and other indebtedness in the manner prescribed in the deed of trust, and

"Whereas, in order to facilitate the sale of said lands by the trustee as aforesaid it is desired that Knight and Williams, the first parties, shall, in addition to staying proceedings for the foreclosure of said mortgages, agree to execute and deliver partial releases of said mortgages from time to time as herein more specifically stated.

"Now, therefore, in consideration of the premises it is agreed as follows:

"(1) That the first parties will stay proceedings in said foreclosure proceedings for the period of one year from this date.

"(2) That the first parties will release from the lien of said mortgages and each of them, as well as all other liens held by first parties, from time to time, within the period of one year, tracts or parcels of lands, upon payment to the first parties for the amount so released as follows."

After providing the terms upon which the releases shall be given, the agreement continues:

"(4) That for the considerations and agreements herein contained the second party shall, from this date until said mortgages, interest, costs and attorneys fees are fully paid, pay to the first parties, or their assigns, the sum of $550 for each and every month or fraction of a month that the aforesaid mortgages, interest, costs and attorneys fees, or any part thereof, remain unpaid. Provided, however, that the

total sum thus paid for the considerations herein expressed for the entire year during which proceedings are stayed shall not exceed the sum of $5,000. The sum so agreed to be paid shall bear interest at the rate of eight per cent per annum and shall be paid within the year during which proceedings are stayed, and before the full satisfaction of said mortgages, and if not so paid said obligation shall be construed to be a lien on the land described in the mortgage and platted as Lakeside City, and may be foreclosed in any manner provided by law, and said land may be sold and the proceeds thereof applied to the payment of said obligation, and in any suit or action which may be brought for the recovery of said payments there shall be included in any judgment which may be recovered a reasonable attorney's fee.

"(5) That Lakeside City shall be conveyed to a reputable trustee within thirty days from this date, which trustee shall have power to sell said lands and shall be instructed to apply the proceeds of said sale or sales to the payment of said mortgages, interest, costs and attorney's fees and other obligations of the second party as provided in the deed of trust.

"(6) It is understood that the American Investment & Improvement Company is now in the hands of a receiver, and if the court orders a sale of said lands, through the receiver, and such sale is made, this agreement shall be void."

The mortgages referred to in the agreement were executed by the defendant corporation to the plaintiffs, were purchase money mortgages, and secured the payment of two notes drawn respectively for $15,999 and $3,000, and bear interest at the rate of six per cent per annum, the former from a date several months anterior to the date of the note, the latter from the date of the note. The defendant Lee did not sign either the note or the mortgages. The mortgage indebtedness was paid prior to the commencement of the action, without the aid of the sale and release clause in the contract. At the time the contract was made, the defendant corporation was in default in the payment of interest on the two mortgage notes some $3,000, was heavily indebted to other parties in such a manner as to embarrass it in the sale of the land, and its property was in the hands of a receiver,

but none of the property was sold through him. The plaintiffs seek to recover the $5,000 and interest stipulated in the contract, and to foreclose the lien which it purports to create. It is alleged in the bill that the defendant Lee had acquired some interest in the mortgaged land before the date of the execution of the contract, which he would have lost through the mortgage foreclosure, and that he was the principal stockholder in the defendant corporation. The consideration for the contract is thus alleged in the bill:

"That thereupon, while the said defendants stood in great danger of losing said lands as aforesaid, the defendants agreed with the plaintiffs that if the plaintiffs would stay and suspend proceedings in said mortgage foreclosures for the period of one year, and would during the year within which proceedings were to be stayed, release from the lien of said mortgages the lands therein described in small tracts from time to time on the payment on said mortgages of the amounts agreed upon in said agreement, that the defendants would pay to the plaintiffs the sum of five thousand dollars ($5,000), with interest thereon from the date of such agreement until paid at the rate of eight per cent per annum."

The defendants pleaded affirmatively, that the mortgage notes bore interest at the rate of six per cent per annum; that the mortgages had been paid and discharged of record; that the real consideration for the promise to pay the $5,-000 was the extension of the time of payment of the mortgage notes for one year; that the amount agreed to be paid was largely in excess of the lawful rate of interest; that at the time the contract was executed, the property of the defendant corporation was in the hands of a receiver; and that the contract was usurious. Both mortgages provide for a release of certain lands upon the payment of stipulated sums of money. There was a judgment and decree for the plaintiffs, which the defendants have brought here for review.

The consideration for the contract was two-fold: (1) Extension of time of payment of the mortgage notes for a period of one year from the date of the execution of the contract,

and (2) the agreement to release the property in parcels to conform to actual sales at fixed prices. The contract does not segregate these items. The amount which the appellants agreed to pay is almost treble the lawful rate of interest. We think the contract is usurious upon its face. This view is given prominence by the promise to pay at the rate of $550 per month, "for each and every month or fraction of a month that the aforesaid mortgages, interest, costs and attorney's fees, or any part thereof, remain unpaid," not exceeding $5,-000. If the meat of the consideration was not the extension of time, why this provision. If sufficient property had been sold and released in one month to discharge the indebtedness, the liability would have been limited to $550. If the same object had been accomplished in two or three months as the evidence shows the parties anticipated, the liability would have been twice or thrice that sum, and $5,000 if it required one year. The lawful and the unlawful are so intermingled as to taint the entire transaction as usurious. If we look to the evidence we find it equally confusing. The case is within the rule announced in *Inland Trading Co. v. Edgecombe*, 57 Wash. 257, 106 Pac. 768. Wherever a disguise has been used to evade the statute, the courts will, as aptly observed by Judge Ailshie, in *Ford v. Washington Nat. Bldg. & Loan Inv. Co.*, 10 Idaho 30, 76 Pac. 1010, 109 Am. St. 92, "look through a veneer of words" and find the real object sought. It is too apparent to require comment that the releases would have been unavailing without an extension of time.

Counsel for the respondents argue that the contract provided a scheme of liquidation, and that a charge of $1,440, the difference between the rate of interest in the mortgage notes and the rate allowed by law, could have been exacted. The latter part of the statement may be admitted, but this was not done, and the evidence shows that it was not even considered. He also argues that, in addition to the extension, the respondents lost their place upon the trial calendar. This, as counsel for appellants have pertinently suggested, is

one of the incidents of the forbearance. The real case presented, however, is this: The respondents gave no releases and rendered no equivalent for the $5,000 which they seek to recover, other than a postponement of the maturity of the interest-bearing mortgage notes for one year. Any reasoning would be specious which would seek to give the exaction any name other than interest.

It is argued that the clause in the contract to the effect that, if the land is sold through the receiver, the agreement "shall be void," creates a contingency which makes the contract lawful. The word "void" as there used means only that, if the sale is made through the receiver, the contract shall terminate. The rule is, however, that the contingency provided for must put in peril some part of the principal or some part of the interest that may lawfully be reserved. This did neither. The interest reserved in the mortgage notes was subjected to no hazard. Where there is no contingency which subjects the lender to the hazard of a loss other than through a depreciation of the security or the inability of the borrower to pay, these not being classed as hazards or contingencies, and the event happens which imposes a liability in excess of that which the statute permits, the contract is usurious. *Bang v. Phelps & Bigelow Windmill Co.*, 96 Tenn. 361, 34 S. W. 516; *Ford v. Washington Nat. Bldg. & Loan Inv. Co.*, *supra*; 29 Am. & Eng. Ency. Law (2d ed.), 486.

The respondents have cited in support of this contention *Truby v. Mosgrove*, 118 Pa. St. 89, 11 Atl. 806, 4 Am. St. 575. It affords them no comfort. The court there said that, where the lender risks the principal with the chance of getting interest exceeding the lawful rate, there is no taint of usury.

The last point pressed by the respondents is that the contract is lawful as to the appellant Lee, under the rule announced by this court in *Grubb v. Stewart*, 47 Wash. 103,

91 Pac. 562, and *Fenby v. Hunt*, 53 Wash. 127, 101 Pac. 492, to the effect that the defense of usury "is personal to the debtor or his privies and cannot be set up by a stranger." The appellant Lee was not a stranger to the transaction. The record shows that he was to all intents and purposes the corporation; that he owned nine-tenths of its capital stock. The complaint states, and the evidence shows, that he united in the contract so as to relieve the property of certain entanglements. In his agreement to pay the $5,000 he stood in the relation of a surety, and may invoke the protection of the statute. 29 Am. & Eng. Ency. Law (2d ed.), 485. In the broad sense, there was a privity between the appellant corporation and the appellant Lee. Black's Law Dictionary (2d ed.), p. 941, subject "Privies." The lawful and the unlawful are so blended that there can be no segregation, and the entire contract falls within the ban of the statute. Rem. & Bal. Code, § 6251. *Lay v. Bouton, ante* p. 372, 131 Pac. 1153.

The judgment is reversed, with directions to dismiss the action.

PARKER, ELLIS, MAIN, FULLERTON, and CHADWICK, JJ., concur.

MORRIS, J. (dissenting).—I am unable to concur in the majority opinion, and will state my reasons for not doing so.

In order to determine whether or not this contract was usurious, it is necessary to review the situation of the parties at the time of the execution of the contract, with a view of ascertaining its true import and the intent of the parties. In addition to the facts recited in the contract, it appears that these two mortgages were being foreclosed. The day of trial had been set for June 17, and the parties were then in court awaiting the calling of the case, when D. H. Lee, the moving spirit in the appellant company, with his attorney, conceived the idea of an adjustment of the difficulties facing the company which would enable it to extricate itself from

the financial and other entanglements in which it was then floundering. At this time the company, in addition to facing the loss of its property through this foreclosure, was involved in much litigation growing out of its handling of the lands involved in the mortgages. Some of these suits had resulted in judgments against the company. Others were still pending, and in one of them a receiver of all the assets of the company had been appointed. Its pressing obligations, including the costs in the receivership suit, exceeded $40,000. Unless something could be done to extricate the company from these difficulties, it faced a loss of its interest in these lands which, since their purchase and the giving of the mortgages, had become very valuable. Mr. Lee believed if the company could continue to handle these lands by placing low and salable values upon the lots into which portions of it had been platted, in a comparatively short time sales could be made aggregating enough money to enable the company to pay off all claims against it. Accordingly overtures were made to respondents to abandon the foreclosure, which resulted in the contract sued upon. Under this contract the company went ahead, and in the course of time succeeded in meeting all its obligations. It now refuses to keep its contract under a plea of usury.

It is apparent, I think, from these facts that the equities of the case are all with respondents. By delaying foreclosure of these mortgages, the company was able to put these lots on the market with releases as sold, until it had accumulated enough money to meet its obligations and save for itself a property of value which otherwise, the chances are, would have been lost. Ordinarily the plea of usury is made by a borrower who has been made the victim of oppression, and whose necessities have been so taken advantage of by another as to deprive him of that freedom in contracting which the law requires and place him at the mercy of his creditor. It would hardly seem as though such a situation was before us. This scheme was the proposal of the bor-

rower for its own protection, which has resulted, as it anticipated, to its great advantage. Section 6 of this contract provides that it shall be void if the court shall order a sale of the lands in the receivership proceeding. This was a contingent event beyond the knowledge or control of either party, and which might or might not happen. This $5,000 was not payable absolutely upon the happening of a certain event, but was contingent upon the receiver not being ordered to make a sale of these lands. In other words, the contract and each and all of its provisions were dependent upon the action of the court in the receivership proceeding; and, as we understand the law, when the payment of interest is subject to a contingency wholly or in part, so that the lender's profit is put in hazard, the interest so contingently payable need not be limited to the legal rate, providing the parties are contracting in good faith and without intention to avoid the usury statute, and that the same rule governs where only part of the legal interest is in hazard. In the case of *Lay v. Bouton, ante* p. 372, 131 Pac. 1153, the above rule from 39 Cyc. 952, is quoted with authority, as is also the case of *White Water Valley Canal Co. v. Vallette*, 62 U. S. 414, where it is said:

"Where there is a loan, although the profit derived to the lender exceeds the legal rate, yet if that profit is contingent or uncertain, the contract, if *bona fide* and without any design to evade the statute, is not usurious."

*Missouri, K. & T. Trust Co. v. McLachlan*, 59 Minn. 468, 61 N. W. 560, is also quoted to the effect that, where the contract has the form of a contingency, the court will scrutinize it for the purpose of ascertaining whether that contingency is a real one or a mere shift or device to cover usury. Applying these rules of law to the facts in this case, it does not seem to me there can be any question but that this contract was entered into in good faith, and that the parties at the time had no thought of the usury statute or any intent or purpose to avoid it. The appellants wanted to save their

property.  They could do it in no other way.  If the respondents desired to push the appellants to the wall, all that was necessary to do was to proceed with the foreclosure suit. It was not necessary, in order to derive any additional profit, that they should enter into this contract, because forcing the foreclosure suit to a final determination and repossessing themselves of the lands, which had become very valuable, would have been much more profitable to them than the $5,000, which was the greatest sum that they could secure under this contract.  It therefore seems to me that the contract bears upon its face, when read in connection with the facts surrounding it, evidence that it was entered into in good faith, at appellants' request and need, and for the purpose of extricating them from their financial straits, without any thought of avoiding any usury statute.  Now that it has served its purpose, they wish to avoid it.  The court ought not to assist them in doing so, and thus put a premium on dishonesty.

For these reasons I dissent.

CROW, C. J., and MOUNT, J., concur with MORRIS, J.