[No. 14202. Department Two. February 1, 1918.]

# H. L. RICHARDSON, *Appellant,* v. I. M. FOSTER, *Respondent,* H. M. MOSELEY, *Defendant.*[1]

USURY—RENEWAL—NEW PARTY AND SECURITY. Where a usurious note calling for a bonus and work in addition to the legal limit of interest was continued by a renewal note carrying the remainder of the usurious debt with an additional usurious exaction of its own, the whole is tainted with usury, although the renewal adds another party and another security.

SAME — DEFENSE OF USURY — PRIVIES — STOCKHOLDERS. Where a usurious note by a corporation and officers and a usurious renewal thereof signed by a stockholder, were one continuous indebtedness for the benefit of the corporation, the maker of the renewal is not a stranger but is a privy to the entire transaction and is entitled to set up the defense of usury.

CORPORATIONS—PLEDGE OF STOCK—SALES—NOTICE. The pledgee of stock of a corporation who sells the same without giving public notice of the sale is liable for its conversion, a mailed notice to the pledgor not being sufficient.

Appeal from a judgment of the superior court for Spokane county, Kennan, J., entered January 3, 1917, upon the verdict of a jury rendered in favor of the defendant, in an action on a promissory note. Affirmed.

*Charles P. Lund,* for appellant.

*Zent & Powell,* for respondent.

HOLCOMB, J.—Appellant brought this action to recover from defendants upon a promissory note for $550, dated July 3, 1911, bearing interest at twelve per cent per annum. Defendant Moseley, a resident of Illinois, was not served with process and did not appear. Defendant Foster appeared and, by answer, admitted the execution of the note sued upon, and set up two affirmative defenses: (1) That, on or about

[1]Reported in 170 Pac. 321.

January 5, 1910, appellant loaned to H. M. Moseley and C. D. Cleek the sum of $1,450, evidenced by their joint and several promissory note for $1,500, demanding and receiving from the makers $50 as a bonus, $25 per month interest, and in addition was to have his family laundry free; that the makers of the note, up to July 1, 1911, paid $25 per month as interest and $246.90 in laundry work; that all the money borrowed was for the use and benefit of the National Laundry Company, a corporation, and that the makers thereof and the defendant Foster were officers and stockholders of that corporation and interested in the success thereof; that, about July 1, 1911, the defendant Foster reduced the $1,500 note by payment in cash of $550, and it was agreed between appellant and the defendants that appellant would extend the time of payment of the balance, providing they would sign a joint and several promissory note bearing interest at twelve per cent per annum, and that the defendant Moseley would continue to furnish plaintiff with laundry work free, and further, would assign to appellant, as security for the payment of the renewal note, five shares of the capital stock of the National Laundry Company; that, pursuant to that agreement, the defendant Foster paid to appellant $950 in cash, and the $550 note was executed, and defendant Moseley agreed that the National Laundry Company would continue to do the laundry work for appellant and his family without charge until the note was paid off; that thereafter appellant obtained laundry work from the National Laundry Company between July 1, 1911, and July 8, 1912, in the total sum of $76.50, without expense to the appellant, which was given to him and accepted as an additional reward or bonus for the loan, and that, by reason of the matters and things alleged, the usury demanded by appellant and received upon the loan, the

whole amount of the note had been paid and satisfied; (2) that, at the time of the execution and delivery of the note to appellant, defendant caused to be assigned in blank and delivered to appellant a certificate for five shares of the capital stock of the National Laundry Company as collateral security; that it was agreed between appellant and defendants, at the time, that whichever of defendants paid such note should receive the certificate of stock assigned as collateral. Thereafter, and on or about February 15, 1912, defendant Foster was ready, able and willing to pay the whole of the note and so advised appellant, and then offered to pay the note in full if appellant would deliver the five shares of stock assigned as security, but appellant, without excuse and contrary to his agreement, refused to surrender the stock, and, at that time, the defendant Foster would have paid the note had appellant delivered the stock in accordance with his agreement; (3) that, at some time in 1914, the exact date being unknown to defendant Foster, appellant, without any authority and contrary to his agreement and without notice to the defendants, sold and converted the five shares of the capital stock of the National Laundry Company and refused to account to defendant therefor; that the stock so converted was of the reasonable value of $500 or more.

Appellant demurred to the first and second affirmative defenses set up by defendant Foster, who is the respondent here, his demurrer was overruled, and he thereupon replied, denying certain of the allegations of the answer, and by way of affirmative defense thereto, alleged that the defendant Moseley deposited with appellant a certificate of five shares of the capital stock of the National Laundry Company; that, on April 15, 1915, appellant gave notice of the sale of the shares, the same were sold for $275, and that sum credited

upon the note; that the certificate for five shares was, in truth and in fact, an overissue as to two shares and was a full certificate for only three shares, and that respondent Foster had notice and knowledge of the sale and at no time raised any objection or protest thereto, and that thereafter appellant sold the shares to the National Laundry Company for $275 and delivered the certificates therefor.

Upon these issues, the cause was tried to a jury, and resulted in a verdict for respondent, and against appellant, for the sum of $229. Motions for a new trial and for judgment *non obstante veredicto* were unsuccessfully made, and judgment entered upon the verdict.

Respondent sustained all the allegations of his affirmative answer, with the exception that the evidence showed that, upon the original loan of $1,500 borrowed by Moseley and Cleek, $50 was retained by Moseley and the remainder used for the benefit of the National Laundry Company. It was further shown that, at the time of the original transaction and at all times thereafter, respondent was a stockholder and interested in the National Laundry Company.

Appellant complains of the submission of the issues to the jury upon the theory that the original transaction in borrowing the $1,500 for the National Laundry Company by Moseley and Cleek, although usurious, could be continued into the transaction entered into by the giving of the note for $550 by Moseley and Foster so as to make it also usurious in connection with the original loan.

I. It is urged, first, that the respondent Foster was not entitled to plead and take advantage of the usury in the original note of the National Laundry Company and Moseley and Cleek. Cases are cited to the effect that respondent was a stranger to the original trans-

action, and the defense of usury is not one which can be urged by a stranger to the transaction.

It is, of course, almost universally established that the defense of usury is personal to the debtor and his privies, and this proposition is not controverted by respondent. But respondent contends that he stood in the position of a surety or, if nothing else, was in privity with the makers, as he was a stockholder and interested in the success of the corporation, and, therefore, was not a stranger to the transaction entered into by the original debtors.

It is a settled principle that an obligation once usurious is always usurious so long as its original existence continues; but it is also true that an indebtedness tainted with usury may be purged of the usury, and, when evidenced by a new, different and clean instrument, will be enforced by the courts. 39 Cyc. 1002.

Here the original usurious instrument for $1,500, with its bonus and laundry work in addition to the legal limit of interest, cannot be separated from the subsequent renewal instrument, and the new instrument was not a clean instrument which would purge the entire transaction of its usurious taint. The new instrument carried the remainder not paid of the former usurious debt, and an additional usurious exaction of its own that resulted in a usurious amount of $76.50.

"The general principle determining when an indebtedness infected with usury is to be deemed disinfected may be stated as follows: If the tainted obligation is with the full knowledge and consent of the borrower, finally canceled or abandoned, and a new obligation, containing no part of the usury, is executed in legal form, and supported solely by the moral obligation resting upon the borrower to pay the money actually received with legal interest thereon, such new obligation is valid and enforceable. But so long as the orig-

inal usurious obligation continues to exist, based upon a consideration in which usury inheres, the taint of usury persists, whatever may be the form which the subsequent dealings of the parties may cause it to assume, and even though new parties may have been introduced, or the borrower allowed to assume a different relation to the security affected with usury. . . . In accordance with the general principle above stated the renewal of a usurious contract is itself usurious, being merely a new form of the same obligation. Likewise the substitution of a different kind of security or one executed by other parties for the original usurious instrument does not expunge the usury so long as the taint remains in the consideration. The fact that the security in question is the last of a long series of successive renewals does not change its character. The original usury descends with the original consideration along the whole line and the last is no better than the first.

"So long as the original usurious consideration persists, the fact that a renewal note imposes liability upon new parties, or imposes different liability upon the original parties, does not free the original obligation from usury, unless the facts are such as to constitute a novation." 39 Cyc. 1002, 1003, 1005.

The renewal note itself was independently tainted with usury, and being a renewal for the balance of the former usurious note, the whole is so tainted with usury that Moseley, who was the maker of both notes, would undoubtedly be entitled to set up usury as a defense. And certainly, under the rules above stated, the entire transaction being one continuous indebtedness for the benefit of the laundry company, of which Foster was a member, and being usurious, Foster also was entitled to introduce that evidence. He was privy to the entire transaction. See *Knight v. American Inv. & Imp. Co.*, 73 Wash. 380, 132 Pac. 219. There is no doubt, therefore, that the court properly submitted the case to the jury upon the question of usury.

II.   The second contention presented by appellant is that respondent is not entitled to judgment against appellant for conversion of the five shares of stock pledged as collateral and sold by appellant and applied on the note.

From the evidence presented to the jury, and upon which the court submitted that issue, it was agreed between Foster and Moseley on the one side and appellant on the other, at the time the renewal note was made and the stock assigned, that whichever of the makers of the note paid it should be entitled to the stock assigned.

Appellant undertook to dispose of the stock by a contract of sale in February, 1915, before he acquired any semblance of title to it.   He also undertook to give notice of sale to the makers of the note by registered mail.   The notices were mailed in the post office at Spokane, Washington, April 3, 1915, that to respondent being addressed to him at Portland, Oregon, but not received by him there, but at Warrenton, Oregon, on April 16, the day after the notice stated the shares of stock were to be sold.   On April 15, appellant went through the form of a sale of the shares of stock and, there being no other bidder, bid them in himself for $275, and then transferred them to one Strang, to whom he had contracted in February to sell them for that sum.   The court submitted the matter to the jury upon the question of whether or not reasonable notice was given to respondent, giving respondent reasonably sufficient time in the circumstances to receive the notice and to attend at the place of sale, and also such reasonable time as might be needed to redeem the pledge from the obligation before sale.

The jury found in favor of respondent upon the question of notice and the conversion of the stock by appellant, and we do not consider the instruction prej-

udicial to appellant, for the reason that his manner of giving notice was not sufficient in law in any event. It was held in *Nagel v. Ham, Yearsley & Ryrie,* 88 Wash. 99, 152 Pac. 520, that a pledgee of a certificate of stock must give public notice of a sale by him to satisfy the debt for which the stock is pledged, under the rule at common law requiring public sale, there being no statutes in this state governing the procedure. Appellant did not give public notice, and did not give any notice which was received by respondent in time for him to act upon it in any way.

We find no error in the proceedings. Affirmed.

ELLIS, C. J., CHADWICK, MOUNT, and MORRIS, JJ., concur.