[No. 26295. Department One. April 6, 1937.]

HERMAN G. CELIAN *et al., Respondents,* v. COAST FINANCE CORPORATION, *Appellant.*[1]

*Caldwell, Lycette & Diamond,* for appellant.

*Eimon L. Wienir,* for respondents.

BLAKE, J.—September 12, 1931, the plaintiffs executed to H. S. Norman a promissory note and chattel mortgage. September 14th, Norman endorsed the note "with recourse," and assigned the chattel mortgage to defendant. In May, 1935, defendant instituted foreclosure proceedings by notice and sale. Plaintiffs caused the proceedings to be transferred to the superior court.

Plaintiffs alleged that Norman was merely the agent of defendant in making the loan which was evidenced by the note and secured by the chattel mortgage, and that the transaction was tainted with usury. Defendant denied these charges, and alleged that, if usury

[1]Reported in 66 P. (2d) 363.

tainted the original transaction, it was purged by a subsequent agreement entered into by it and plaintiffs May 1, 1934. The issues were tried to the court, which made findings to the effect that Norman was the agent of defendant in making the loan; that the transaction was tainted with usury, which was not purged by the agreement of May 1, 1934; that the total payments made by plaintiffs, together with penalties allowed by statute, were in excess of the balance due on the note. Judgment was entered canceling the note, mortgage and agreement of May 1, 1934. Defendant appeals.

█ That the original transaction was tainted with usury, is not debatable. The note was for $2,400, payable in one year, with interest at eight per cent. For the note, respondents received only $2,000.

█ Nor is Norman's agency in the transaction open to question. The note and mortgage were on forms used by appellant and furnished to Norman. In inter-office correspondence between the president and the secretary-treasurer of appellant, we find the following in a letter, from the former to the latter, dated August 28, 1931:

"As for the Celian deal, we have today inquired through this office, on the Art Printing Company, and have talked also with the American Type Company here as to giving us a guarantee to back them up in the event that the man fails to comply."

And again, in a letter from the latter to the former, dated August 31, 1931, we find this:

"The Celian deal will have to be $2,000 or nothing. Mr. Celian has been in a couple of times recently and has explained his situation quite thoroughly to me, and I can appreciate that $1,000 would not do him a great deal of good at this time. However, I am looking into it further on the $2,000 basis, seeing if I can get a letter from any of the printing machinery houses in Seattle who would guarantee that much on the property in

event of sale. If we can get that, I still feel that it will be a good loan.''

The situation at the time the agreement of May 1, 1934, was executed, is quite involved. Respondents were in default, and appellant was threatening foreclosure. Respondents were then owners of two second mortgage bonds of the Washington Athletic Club, of the face value of $2,000. These bonds were held by Seattle Printers Exchange, however, to secure an indebtedness of $553. While the bonds had no market value, respondents had been informed that they were actually worth $550.

Prior to the execution of the agreement of May 1st, the president of appellant (who owned ninety-nine per cent of its stock) ascertained that the respondents' indebtedness held by the Seattle Printers Exchange could be compromised for twenty-five cents on the dollar. Thereupon, the agreement of May 1st was executed, wherein respondents acknowledged the amount of their indebtedness to be $1,962.51. (At that time, they had paid on the loan an amount in excess of $850.) The agreement contained the following recitals:

''WHEREAS, the party of the first part has intimated that usury interest exists in the above mentioned note and mortgage securing the same, not acknowledged, however, by the second party; and

''WHEREAS, the parties hereto desire to fully and completely settle, compromise and adjust any and all differences between them, including any question of usury, Now, THEREFORE,'' etc.

Then follows an agreement on the part of respondents to transfer the bonds to appellant in consideration of a credit on the note of $412.51 and the assumption by appellant of respondents' indebtedness to Seattle Printers Exchange. Appellant then paid Seattle Printers Exchange $138.25, in full settlement of respondents'

indebtedness to the latter. Shortly thereafter, the president of appellant purchased the bonds for his personal account at $412.50. He then turned them over to the Washington Athletic Club, receiving a credit for $600.

A subsequent agreement to waive the usury which inheres in the original transaction is against public policy, and a debtor will not be held to it (*Motor Contract Co. v. Van Der Volgen,* 162 Wash. 449, 298 Pac. 705, 79 A. L. R. 29), unless the indebtedness is "evidenced by a new, different and clean instrument." *Richardson v. Foster,* 100 Wash. 57, 170 Pac. 321. "An obligation once usurious is always usurious so long as its original existence continues." *Richardson v. Foster, supra.*

In the light of these rules, we do not think the original transaction was purged of usury by the agreement of May 1, 1934. On the contrary, appellant made approximately fifty dollars profit on the very transaction which it asserts purged the original transaction of usury. For, under the facts, appellant and its president were one. *The Sheffield Co. v. R. Hoe & Co.,* 173 Wash. 489, 23 P. (2d) 876, and *State v. Davies,* 176 Wash. 100, 28 P. (2d) 322. The fact that the profit was directly made at the expense of respondents' other creditors, we regard as immaterial. In final analysis, the profit was made at the expense of respondents. For, presumably, they themselves could have made as advantageous a compromise with Seattle Printers Exchange as was actually made by appellant.

Judgment affirmed.

MAIN, MILLARD, and GERAGHTY, JJ., concur.

STEINERT, C. J. (concurring in the result)—I concur in all that is said in the majority opinion except the statement in the latter part thereof with reference to

680

the profit of fifty dollars alleged to have been made by appellant's president in the purchase and sale of the Washington Athletic Club bonds. The fact that appellant's president made a profit on the resale of the bonds, resulting from their application on his personal account with the club, is wholly immaterial. It had no relation to the dealings between the parties hereto. Aside from that, however, the usury involved in the entire transaction wholly extinguished the debt, under the rule adopted by this court in *Jason v. Sandros,* 168 Wash. 87, 10 P. (2d) 995.

I concur in the result.