[No. 28874. Department One. February 26, 1943.]

E. J. AUVE, *Appellant*, v. A. A. FAGNANT *et al.*, *Respondents*, RUTH E. LARSON, *as Receiver*, *Respondent and Cross-appellant.*[1]

[1]Reported in 134 P. (2d) 454.

*Don M. Tunstall* and *Cheney & Hutchinson,* for appellant.

*Walter V. Swanson* and *H. A. LaBerge,* for respondent and cross-appellant.

MALLERY, J.—Plaintiff, E. J. Auve, brought this action upon the guarantee note of defendants, which guaranteed to the extent of five thousand dollars the note of Falls Creek Mines, Inc., of face value of ten thousand dollars. Both notes were a part of one transaction. Defendants answered, alleging payment and usury. The receiver of Falls Creek Mines, Inc., hereinafter called the receiver, intervened, asking recovery from plaintiff of money paid on its note, because of the usurious nature of transaction. Plaintiff replied that the question of usury had been settled and determined in a compromise agreement, and denied the payment. A part payment in money was admitted by both plaintiff and defendant.

From a judgment of dismissal in favor of the defendants and a judgment for one dollar and costs in favor of the receiver, the plaintiff appeals.

In his reply brief, appellant states:

"As appellant stated in his opening brief (p. 15), there was evidence, all of it highly disputed and contradicted, upon which the jury could find usury in the original transaction, bringing up the only real issue in the case—was the issue of usury foreclosed by the compromise of the first case (Ex. 7) by the execution, delivery and performance of the agreement (Ex. 6)?"

The jury found for the defendants generally, and for the receiver in the sum of one dollar. The receiver asks us to increase this verdict to $3,775.

Two separate interrogatories were presented to the jury: (1) Did plaintiff, E. J. Auve, subscribe and pay twenty-five hundred dollars for ten thousand shares of the capital stock of Falls Creek Mines, Inc., on or about June 13, 1939? The jury answered, "Yes." (2) Did plaintiff, E. J. Auve, loan to Falls Creek Mines, Inc., the sum of seventy-five hundred dollars, or the sum of five thousand dollars? The jury answered, "Five thousand dollars."

The transaction was fraught with considerable confusion, and the testimony of the witnesses conflicted in many places. Appellant's contention is contained in the "compromise" agreement hereinafter set forth. In view of the verdicts and answers to the two interrogatories returned by the jury, the facts which they were entitled to find from the evidence are as follows: Appellant loaned to Falls Creek Mines, Inc., five thousand dollars on the 13th day of June, 1939. The company made and executed a note, on the same date, in the principal sum of ten thousand dollars, payable to appellant, and also gave him a chattel mortgage, with a ball mill as security. This mortgage set out the ten thousand dollar note. The individual respondents, who were then directors of the mining company, made and executed a guarantee note of five thousand dollars, the amount actually loaned by plaintiff on the ten thousand dollar note.

On the same day, June 13, 1939, appellant purchased ten thousand shares of stock of the mining company, at twenty-five cents per share, for twenty-five hundred dollars. Before so doing, he signed a formal subscription for these ten thousand shares of stock, which subscription recited the price and the amount paid. There

were issued to appellant that same day, in two certificates, ten thousand shares of treasury stock, and appellant signed his name in the stock register, acknowledging receipt of the stock certificates.

The same day, he paid to the mining company by check, twenty-five hundred dollars for the stock purchased. Thereafter, over a considerable period, he paid five thousand dollars by a large number of checks for the use of the mining company, and these payments constituted the money loaned the company. Appellant received repayment of the five thousand dollars loaned. On the back of the ten thousand dollar note are acknowledgments by plaintiff of payments totaling five thousand dollars, twenty-five hundred dollars being composed of ten two hundred fifty dollar payments, and twenty-five hundred dollars being a credit by stock.

The ten thousand dollar note itself provides for payments in stock of a portion of the principal, as follows:

"It is further provided, as a condition hereof, that the sum of Twenty-five Hundred ($2500.00) Dollars may be paid on this note by the issuance of stock in Falls Creek Mines, Inc., a corporation, or other stock of equal value acceptable to payee; but such payment in stock shall not affect the necessity of paying to payee fifty cents per ton of all ore delivered to the mill of maker, nor the necessity of paying said minimum sum heretofore provided for."

This sum of twenty-five hundred dollars, in accordance with the foregoing provision of the note, was paid some months later by the company, which obtained ten thousand shares of previously issued stock for said purpose, and the stock was accepted by appellant, in lieu of twenty-five hundred dollars or in lieu of other stock of equal value.

In the latter part of 1940, an action was brought by the mining company and the respondents against the

appellant, seeking a declaratory judgment. Among other things, they alleged that, on June 13, 1939, the mining company borrowed from Auve five thousand dollars in cash; that Auve required as a condition of the loan that the company repay ten thousand dollars and that it be secured by a chattel mortgage; that the mining company agreed to pay Auve ten thousand dollars for the five thousand dollar loan, as provided in the note, and executed the mortgage; that Auve required the individual respondents to agree to pay him five thousand dollars in case the mining company defaulted. They alleged the payment of the loan and stated:

"The transaction above mentioned by which the defendant loaned to the corporate plaintiff the sum of $5000 is usurious under the laws of the State of Washington, in that it required the payment by said corporate plaintiff of twice the amount of said loan. That said corporate plaintiff has, as above set forth, paid to the defendant the full amount of said loan, and because of the usury involved in said transaction, the plaintiffs are not indebted to the defendant in any sum or amount."

And they further alleged:

"That an actual bona fide controversy exists between plaintiffs and the defendant herein."

Appellant answered, and cross-complained against the mining company and guarantors, who, in turn, replied, which put the case at issue.

While this action for a declaratory judgment was pending, negotiations took place between the appellant, personally, and the respondents. Appellant in his cross-complaint had prayed for a receivership of the mining company, and the company was still in straitened circumstances, though its officers, who were guarantors on the note, still retained hope that it would

succeed. Appellant had his attorney prepare an agreement which he took to each of the parties and which they executed in the early months of 1941, the last signature having been obtained in March. Appellant agreed, in consideration of the signing, to delay for some six months any further suit upon the note. This agreement, exhibit 6, upon which appellant strongly relies as a binding compromise, reads as follows:

"AGREEMENT

"KNOW ALL MEN BY THESE PRESENTS: That, whereas, FALLS CREEK MINES, INC., a corporation, and JOHN E. PETERSON, A. A. FAGNANT, LEON BABIN, LEO H. HANSES, EDWARD S. BROWN, and EMIL T. BELLIVEAU, hereinafter referred to as parties of the first part, have heretofore instituted suit against E. J. Auve, hereinafter referred to as party of the second part, praying for a declaratory judgment, declaring that certain loans made by party of the second part to Falls Creek Mines, Inc., a corporation, are tainted with usury, and,

"Whereas, party of the second part in said litigation has denied the contention of parties of the first part, and has prayed the court for a judgment declaring that indebtedness owned by said Falls Creek Mines, Inc., and the remaining parties of the first part is overdue and delinquent, and,

"Whereas, parties of the first part and party of the second part have agreed that said action be dismissed, now, therefore, to define the rights of the parties hereto and to agree upon the facts it is mutually understood and agreed by and between the parties hereto as follows, to wit:

"1. That heretofore and on or about the 13th day of June, 1939, said party of the second part loaned to said Falls Creek Mines, Inc., a corporation, the sum of Seventy-Five Hundred Dollars ($7500.00), said sum to be repayable from gross mining receipts of said corporation, but in a sum of not less than Two Hundred Fifty Dollars ($250.00) per month together with interest at the rate of six per cent per annum on unpaid balances.

"2. That at the time of making said loan, said corporation was not in production as a mining company; that its stock had no true market value, and the recognized future value of the stock of said corporation was speculative and indefinite.

"3. That as an inducement to party of the second part to make said loan, it was agreed that 20,000 shares of stock in Falls Creek Mines, Inc., a corporation, would be delivered to him. That at the time of said agreement, it was not contemplated by any of the parties hereto that the delivery of said stock would of necessity return to party of the second part interest in excess of the legal rate. That it was the desire of parties of the first part to secure party of the second part as a stockholder in said corporation. That by publicizing the fact that said party of the second part was then a stockholder in said corporation parties of the first part believed that further and additional funds could be more easily secured by said corporation. That in truth and in fact that association of said party of the second part with said corporation enabled said corporation to secure additional financial assistance.

"4. That in carrying out the terms of said original loan, note and mortgage were executed in the sum of Ten Thousand Dollars ($10,000). That it was agreed by the parties to said note and mortgage that no interest would be charged on Twenty-Five Hundred Dollars ($2500.00) reduction would be made on the face of said instrument upon turning over to party of the second part 10,000 shares of stock in said corporation. That the additional 10,000 shares of stock delivered to party of the second part were, in order to facilitate keeping of records of said corporation, delivered to him under an apparent stock subscription, but that it was not the intention of party of the second part or of parties of the first part that said stock subscription be anything other than the machinery through which party of the second part might receive said extra 10,000 shares of stock as part of a bonus for making said loan.

"5. That in consideration of the facts before stated, all the parties hereto agree that said transactions constitute a simple loan of Seventy-Five Hundred Dollars ($7500.00) with six per cent interest reserved and an

additional amount of stock of purely speculative value delivered to party of the second part without any intention by any of the parties hereto of making exhorbitant, unconscionable or usurious return on the loan of party of the second part, and the parties hereto do further agree that no taint of usury exists in connection with the said transaction. DATED at Yakima, Washington this ............... day of January, 1941.

Falls Creek Mines, Inc.

By PETER THOME, President.

ATTEST:

By A. A. FAGNANT, Secretary

LEON BABIN
EMIL T. BELLIVEAU
LEO M. HANSES
EDWARD S. BROWN
JOHN E. PETERSON

Parties of the First Part

(Corporate Seal)

E. J. AUVE

Party of the Second Part."

Thereafter, the suit referred to in the agreement was dismissed, *without prejudice.*

Seven of appellant's assignments of error are argued together and will be considered together in this opinion. They are directed toward the applicability of the parol evidence rule, as to whether or not exhibit 6, the compromise agreement, was binding on all of the parties.

The question, as put by appellant: Where there is a bona fide dispute between the parties as to whether or not there is, in fact or law, usury in a transaction, can that dispute be compromised and settled by the parties? Appellant claims that exhibit 6 is a full and final settlement, and that the court cannot inquire, or allow any inquiry, beyond it, to determine the facts of an allegedly usurious transaction. Respondents, on the other hand, claim that a case in which usury is alleged is an exception to the parol evidence

rule. They cite the case of *Richeson v. Wood,* 158 Va. 269, 163 S. E. 339, 82 A. L. R. 1189, and the annotation following that case in 82 A. L. R. wherein, at page 1199, it is said:

"On the general subject of the application of the parol-evidence rule where it is sought to show illegality of the written instrument, it is said in 10 R. C. L. on p. 1062: 'The rule forbidding the introduction of parol evidence to contradict, add to, or vary a written instrument does not extend to evidence offered to show that a contract was made in furtherance of objects forbidden by statute, by common law, or by the general policy of the law. No instrument is so sacred, when tinctured with illegality, as to raise it above the scrutiny of parol testimony. And indeed it would be highly impolitic that it should; for, if this rule should prevail as applicable to illegal and vicious contracts, it would be an easy matter to place all contracts, however illegal or vicious, above the reach of the law.'

"General rule:

"One application of the above doctrine is found in cases involving usury. It is a general rule that, for the purpose of showing usury in a written contract, parol or extrinsic evidence is admissible, the parol-evidence rule not being applicable to such a situation. (As pointed out in some of the cases, and as subsequently shown herein, such evidence is admissible notwithstanding it may directly contradict the terms of the writing.)"

Appellant agrees with the general exception to the parol evidence rule, but contends for an exception to the exception as stated in 15 C. J. S., at page 715:

"If there is a genuine dispute between the parties as to the usurious nature of a contract, such controversy may be compromised as well as any other question of a disputed legal right."

This citation is based on a few early Kentucky cases, principally *Gray v. United States Savings & Loan* (1903), 116 Ky. 967, 77 S. W. 200. The facts in that

case were quite unusual and we are not aware that it has ever been cited. Washington does not recognize the exception to the exception to the rule as contended for by appellant.

We conceive that the case of *Celian v. Coast Finance Corp.*, 189 Wash. 676, 66 P. (2d) 363, is determinative of the instant case. In that case, a note and a mortgage were executed in 1931. On May 1, 1934, the parties executed an agreement with the following recitals:

" 'WHEREAS, the party of the first part has intimated that usury interest exists in the above mentioned note and mortgage securing the same, not acknowledged, however, by the second party; and

" 'WHEREAS, the parties hereto desire to fully and completely settle, compromise and adjust any and all differences between them, including any question of usury, Now, THEREFORE,' etc."

With regard to that agreement, this court said:

"A subsequent agreement to waive the usury which inheres in the original transaction is against public policy, and a debtor will not be held to it (*Motor Contract Co. v. Van Der Volgen*, 162 Wash. 449, 298 Pac. 705, 79 A. L. R. 29), unless the indebtedness is 'evidenced by a new, different and clean instrument.' *Richardson v. Foster*, 100 Wash. 57, 170 Pac. 321. 'An obligation once usurious is always usurious so long as its original existence continues.' *Richardson v. Foster, supra.*

"In the light of these rules, we do not think the original transaction was purged of usury by the agreement of May 1, 1934."

Appellant attempts to distinguish the instant case from the *Celian* case. He says:

"The question as to whether a dispute over the existence of usury could be waived, settled, or compromised was not there involved or considered. The issue decided was: 'A subsequent agreement to waive the usury which inheres in the original transaction is

against public policy, and a debtor will not be held to it.'

"This is a far cry from the issue.

" 'If there is a genuine dispute between the parties as to the usurious nature of a contract, such controversy may be compromised as well as any other question of legal right.' "

An analysis of the *Celian* case will not sustain the distinction. It is true that the court therein said: "That the original transaction was tainted with usury, is not debatable." This statement was based upon the lower court's findings. Here we can say, based on the jury's findings, and with equal force: "That the original transaction was tainted with usury, is not debatable." This statement is an ultimate finding of fact by the court. It is not the language of the agreements between the parties in either case.

We adhere to the rule of the *Celian* case, and, therefore, find that all of appellant's assignments of error predicated upon the validity of the compromise agreement must fail.

 Two claims of error do not inhere in this ruling. The court, in instruction No. 13, told the jury as follows:

"You are instructed that the officers and directors of a corporation have no legal authority to *give away* any of the assets of said corporation without the consent of the creditors and stockholders; and if you find that Falls Creek Mines, Inc., agreed to *give* to plaintiff E. J. Auve 10,000 shares of the unissued capital stock of said corporation as a bonus for a loan or otherwise, said agreement was void and of no effect." (Italics ours.)

This instruction was excepted to as follows:

"Plaintiff excepts to instruction No. 13, for the reason that the same is contrary to law in that it states, as a matter of law, a corporation cannot *deliver un-*

*issued stock to a lender in lieu of interest."* (Italics ours.)

Since a delivery of stock in lieu of interest is not a *gift*, the exception is not well taken and must fall.

■ Appellant also claims that instruction No. 16 was error. It follows:

"You are instructed that the market value of an article or commodity, such as the stock involved in this case, *is that price fixed by the buyer and seller* thereof in an open market, in the usual and ordinary course of lawful trade, between those desiring to buy and those desiring to sell, or such prices as dealers in such goods are bought and sold in the open market and in the ordinary course of trade." (Italics ours.)

Appellant excepted to the giving of this instruction, for the reason that market value was not relevant or material to the issues in this case. That may be true. However, it was never disputed by the parties as to what the price agreed upon was, but only whether it was a sale of stock or a bonus. Granting that the question of market value was irrelevant, still the instruction was more favorable to appellant's theory of the case than to respondents'. There being no prejudice suggested, it is held not to constitute reversible error.

■ On the cross-appeal of the receiver on her cross-complaint, it will be observed that her action is not as a defense by way of a set-off, but rather as an action for money had and received. Where the borrower pays the principal or interest, in a suit to recover, he may only have back the amount actually paid, over and above the principal and the full legal twelve per cent interest. *Trautman v. Spokane Security Finance Corp.,* 163 Wash. 585, 1 P. (2d) 867; *Goodwin Co. v. National Discount Corp.,* 5 Wn. (2d) 521, 105 P. (2d) 805, 135 A. L. R. 801.

The only thing of value received by appellant, in addition to the principal of the loan, was that par-

ticular stock receipted for on the back of the ten thousand dollar note. The jury in fixing the value of this speculative stock in relation to the amount of interest accrued found for the receiver in the amount of one dollar. This will not be disturbed.

The judgment is affirmed.

MILLARD, STEINERT, ROBINSON, and JEFFERS, JJ., concur.

May 4, 1943. Petition for rehearing denied.

