[No. 12537.  Department Two.  November 12, 1915.]

## F. H. NAGEL, *Respondent*, v. HAM, YEARSLEY & RYRIE *et al.*, *Appellants.*[1]

PLEDGES—ENFORCEMENT — SALE — PUBLIC NOTICE — NECESSITY.    A pledgee's sale of a certificate of stock to satisfy the debt for which it is pledged is invalid unless had upon public notice, under the rule at common law requiring a public sale, there being no statutes in this state governing the procedure.

CORPORATIONS— STOCK — TRANSFER — DUTY OF OFFICERS — INVALID SALE—EQUITY—RELIEF.    The purchaser of a certificate of stock at an invalid pledgee's sale cannot demand a transfer on the books of the corporation, notwithstanding he holds the original stockholder's blank power of attorney made at or before the time of making the pledge; since the officers of the corporation owe the duty to ascertain whether the transfer was authorized, and a court of equity will not decree a transfer to a person who has no interest in the stock.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered June 29, 1914, in favor of the plaintiff, in an action for equitable relief, tried to the court.  Reversed.

*Voorhees & Canfield,* for appellants.

*Parker W. Kimball* and *Ralph B. Williamson,* for respondent.

MAIN, J.—This action was instituted against Ham, Yearsley & Ryrie, a corporation, Wilbur S. Yearsley, its vice president, and Kenneth Murry, its secretary, for the purpose of compelling the officers of the corporation to transfer to

[1]Reported in 152 Pac. 520.

the plaintiff upon the books of the corporation twelve and one-half shares of its capital stock. After the issues were framed, the cause was tried to the court without a jury, and resulted in a judgment directing that the shares of stock be transferred upon the books of the corporation to the plaintiff. From this judgment, the defendants have appealed.

The facts are as follows: On September 4, 1912, one Donald Ryrie, being indebted to one Frank A. Ross in the sum of $880, executed and delivered to Ross a promissory note for the amount of the indebtedness, due ninety days after date. As security for the payment of this note, Ryrie assigned certificate of stock No. 22, for twelve and one-half shares of the capital stock of the appellant corporation. The assignment was made in the usual form, which appears on the back of certificates of corporate stock, and was in the following language:

"For value received....hereby sell, transfer and assign to ........the shares of stock within mentioned, and hereby authorize........to make the necessary transfer on the books of the corporation. Witness....hand and seal this ....day of......A. D. 19...          D. Ryrie."

The note not being paid when due, Ross, on June 6, 1913, notified Ryrie that, unless the same was paid before June 13, 1913, the twelve and one-half shares of capital stock which he held as security would be sold and the proceeds thereof applied upon the amount due upon the note. On September 25, 1913, the note nor no part thereof having been paid, Ross notified Ryrie that he would sell the certificate of stock on September 29 at the hour of 1:30 o'clock p. m., at his office, room 1018, in the Paulsen building, in the city of Spokane. The notice to Ryrie was by letter delivered to him personally. No public notice of the sale was given. On September 29, 1913, the shares of stock which were evidenced by the certificate were sold at the time and place mentioned in the notice.

Prior to the time the sale was held and on the 11th day of October, 1912, Ryrie had made an assignment of all his

right, title, and interest to Henry Madigan and John Pattison, as trustees for certain creditors. And on December 23, 1912, Ryrie made an assignment of the stock ·represented by the certificate, and other property, to Wilbur S. Yearsley, for the purpose of permitting Yearsley to manage and dispose of the property thus assigned, and out of the proceeds arising therefrom, pay *pro rata* the obligations of Ryrie and of the appellant corporation which had been incurred by Ryrie.

At the time the sale of the shares of stock occurred, Ross had notice of the assignment to Madigan and Pattison and to Yearsley. Prior to the sale, Yearsley, by letter, had notified Ross that any sale or attempted sale held pursuant to the notice given by Ross would be invalid. At the sale, the stock was purchased by the plaintiff through his agent and attorney for the sum of $100, and the certificate of stock was delivered to him. Thereafter he made a demand upon the appellant corporation that it transfer the stock to him as the owner upon the books of the corporation, which demand was refused. Thereafter the present action was brought and resulted in a judgment directing the transfer, as above stated.

Two questions are here presented: First, did title to the stock pass to the respondent by virtue of a valid sale; and, second, if the sale was invalid, does the respondent, notwithstanding that fact, have the right, by reason of holding the certificate assigned in blank by Ryrie with a power of attorney in blank authorizing the transfer, to have it made.

I. There appears to be no statute in this state defining the procedure by which a pledge of personal property may be sold for the purpose of satisfying the debt which it secures. This being true, recourse must be had to the common law. The common law rule is that, in the absence of an agreement between the parties controlling the manner of the disposition of the pledge, two remedies are open to the pledgee. He may begin an action for the foreclosure and

sale of the pledge, or he may exercise his implied authority and sell the pledge at public auction after having given reasonable notice of the time and place of such sale to the pledgor. 31 Cyc. 878; Jones, Collateral Securities (3d ed.), § 603; *Fitzpatrick v. Bank of Forrest City,* 95 Ark. 542, 129 S. W. 795; *Sharpe v. National Bank of Birmingham,* 87 Ala. 644, 7 South. 106.

In the case last cited it was said:

"When the debt for which shares of stock are pledged matures, and is unpaid, the pledgee may file a bill in equity for a foreclosure of the pledge, and a sale under the order of the court, or he may exercise the implied power to sell without resorting to judicial proceedings. If he elects to pursue the latter remedy, the law requires, in the absence of an agreement, that the sale shall be made at public auction, and reasonable notice of the time and place given to the pledgor, that he may have opportunity to redeem the pledge."

One of the necessary incidents of a public sale is that notice thereof shall be given to the public, in order that the purchasers may advise themselves of the terms of sale and the title to the property, and be enabled to bid intelligently. *Hagan v. Continental Nat. Bank,* 182 Mo. 319, 81 S. W. 171; *Tennent v. Union Cent. Life Ins. Co.,* 133 Mo. App. 345, 112 S. W. 754; *Amarillo Nat. Bank v. Harrington* (Tex. Civ. App.), 131 S. W. 231.

In the *Hagan* case, upon this question, it was said:

"But a public sale also implies a notice to the public in order that purchasers may advise themselves of its terms and the title to the property, and be enabled to bid intelligently."

In the present case, no notice of any kind or character was given to the public. The only notice of the sale was the letter, which was delivered personally to the pledgor. There being no public notice, the sale was not held in the manner required by law, and was therefore invalid.

II. While it is not admitted by the respondent that the sale was invalid, it is contended that, even though there were

no valid sale, the purchaser has a right, relying upon the power of attorney upon the back of the certificate signed by Ryrie, to compel the corporation to transfer the stock to him upon its books. This leads to an inquiry as to what the duties of the officers of a corporation are when a certificate of stock is presented and its transfer demanded. The rights of stockholders to participate in the management of the corporation and to receive dividends upon their stock depends upon the register of the ownership of their shares in the corporate books and upon the certificates. The corporation makes the certificates and keeps the registers, and it thereby assumes an obligation to the stockholders to use reasonable diligence to make the records of the corporation speak the truth, and to issue certificates of stock to only those entitled thereto. It is the duty of the officers of the corporation, when a transfer of shares is demanded, to ascertain whether or not a transfer of the stock requested is duly authorized, to make those transfers that are so authorized, and to prevent those that are unauthorized. For a failure to perform this obligation, the corporation is liable to the party injured for the damages it may inflict. *Geyser-Marion Gold-Min. Co. v. Stark,* 106 Fed. 558, 53 L. R. A. 684; *St. Romes v. Levee Steam Cotton Press Co.,* 127 U. S. 614; *Loring v. Salisbury Mills,* 125 Mass. 138; 3 Clark & Marshall, Private Corporations, p. 1841; *Telegraph Co. v. Davenport,* 97 U. S. 369.

When a certificate of stock is presented to the corporation and a transfer of the shares evidenced thereby upon the books is demanded, it is the duty of the officers of the corporation to ascertain whether the person demanding the transfer of the stock in his possession is the owner thereof. In *Citizens' Street R. Co. v. Robbins,* 128 Ind. 449, 20 N. E. 116, 25 Am. St. 445, 12 L. R. A. 498, it is said:

"We do not think the company exercised that degree of diligence required by the law, when it stopped with the examination of the order of sale. Before cancelling the stock

held by the estate of Catherwood, it should have gone further, and ascertained whether such a sale had been made under that order as vested title in Carlisle. It was its duty, before cancelling the stock at the request of Carlisle, and issuing to him stock in lieu thereof, to ascertain that he was the owner of the stock in his possession, and having failed to perform such duty, we think it liable to make good any loss occasioned thereby. Before the company could lawfully cancel the stock held by Catherwood's estate, it was bound to know, not only that an order of sale had been entered by the court, but that a sale had also been made pursuant to the terms of that order."

It is the right of the corporation to protect itself against forged indorsements, and when a certificate is presented, it may inquire into the genuineness of the indorser's signature. In 4 Thompson, Corporations (2d ed.), § 4333, it is said:

"It is the duty of a corporation to use reasonable diligence in every case and to ascertain whether or not a transfer of stock requested is duly authorized by the former owner, and to prevent such as are not authorized; and in case of a breach of this duty it is liable to the injured party. And it has the right to protect itself against forged endorsements, and may require proof of the genuineness of the endorser's signature."

A person who has no interest in the stock cannot ask a court of equity to decree a transfer to him. In *Second Nat. Bank of Grand Forks v. First Nat. Bank of St. Thomas*, 8 N. D. 50, 76 N. W. 504, it is said:

"As plaintiff failed to show any existing indebtedness, it failed to show any present interest in the stock; hence it cannot ask a court of equity to decree a transfer to it."

If the person demanding the transfer has acquired title from a pledgee contrary to the terms of the pledge, he has no right to a transfer. In 4 Clark & Marshall, Private Corporations, p. 3627, it is said:

"Nor can a corporation be held liable for refusal to make record of transfer to a pledgee who has assumed to acquire title to the stock contrary to the terms of the pledge."

Applying these rules to the present case, we think that the sale by the pledgee was invalid because no public notice was given of such sale, and that the corporation had the right to refuse to transfer the stock upon the books of the company.

In the case of *Brown v. Hotel Association of Omaha,* 63 Neb. 181, 88 N. W. 175, there is dictum to the effect that the purchaser of stock at an invalid sale thereof would have a right to a transfer upon the books of a company if there was a blank power of attorney on the certificate signed by the pledgor at or before the time of making the pledge. But this dictum, it would seem, is out of harmony with the well settled rules of law above stated, which seem to us not only to be supported by ample authority, but to be founded in reason. In this case, we express no opinion upon whether the pledgee of the stock prior to the sale, by virtue of the power of attorney, would have had a right to have the stock transferred to him upon the books of the corporation. We only hold that the purchaser at an invalid sale of the stock, evidenced by such a certificate, has not the right to a transfer.

The judgment will be reversed, and the cause remanded with directions to the superior court to dismiss the action.

Reversed.

MORRIS, C. J., ELLIS, and FULLERTON, JJ., concur.