[No. 33848.   Department Two.   May 9, 1957.]

JESSE L. COLAGROSSI, *Appellant*, v. L. W. HENDRICKSON *et al.*, *Respondents.*[1]

[1]Reported in 310 P. (2d) 1072.

*Lynn J. Gemmill*, for appellant.

*Wettrick, Flood, O'Brien, Toulouse & Lirhus*, for respondents.

WEAVER, J.—Plaintiff brings this action upon a promissory note for $5,500 against L. W. Hendrickson, Geraldine M. Nadreau, and the community composed of Geraldine M. Nadreau and her husband. The note did not bear interest; it was not signed by Mr. Nadreau.

Mr. Hendrickson and Mrs. Nadreau admitted borrowing $3,000 from plaintiff; admitted the execution of the promissory note for $5,500; and pleaded that $2,500, represented by the promissory note, constituted usury.

Mr. Nadreau's answer denied his wife's authority to

execute the note on his behalf or on behalf of their marital community; he alleged that the obligation, if any, was the separate obligation of his wife.

Later in this opinion, we will refer to the evidence which tends to support plaintiff's reply to all of the defenses.

The case came on for trial *before a jury*. After plaintiff had rested his case, the trial court sustained a challenge to the sufficiency of the evidence. It dismissed the action against the marital community of Mr. and Mrs. Nadreau

". . . for the reason that the evidence adduced by the plaintiff is insufficient to warrant submission to the jury of the question of the liability of said community."

The court also dismissed the action

". . . as to all of the defendants except as to the difference between the principal of $3000.00 and the interest reserved in the amount of $2500.00."

Plaintiff appeals.

Is plaintiff's proof sufficient to present a *prima facie* case for consideration of the jury?

We bear in mind that defendants' challenge to the legal sufficiency of the evidence admits the truth of plaintiff's evidence and all inferences that reasonably can be drawn from it. We are required to interpret this evidence in the light most favorable to plaintiff (appellant) and most strongly against defendants. *Smith v. American Cystoscope Makers*, 44 Wn. (2d) 202, 204, 266 P. (2d) 792 (1954), and cases cited. Recently, this court said:

"In passing upon the sufficiency of the evidence to take the case to the jury, there is no element of discretion, but the case must be submitted if there is evidence or reasonable inference therefrom to sustain a verdict and if the evidence offers room for a difference of opinion in the minds of reasonable men; and the verdict, in so far as the facts are concerned, cannot be questioned by the courts. . . . The jury is the sole judge of the credibility and weight of the evidence." *Arthurs v. National Postal Transport Ass'n*, 49 Wn. (2d) 570, 577, 304 P. (2d) 685 (1956).

Viewed in this light, plaintiff's evidence discloses the following:

Plaintiff is a laborer from Alaska. The record discloses that he is a man of limited education with little or no understanding of the nice distinctions represented by words such as "interest," "usury," "forbearance," "joint venture," "partnership," and words of like import used in his examination and cross-examination.

Mrs. Nadreau and Mr. Hendrickson, doing business as Nadreau and Hendrickson, with offices in the Central building in Seattle, are engaged in the real estate business, financing, and building. In response to a request to describe their activities in financing and building, Mrs. Nadreau testified:

"Well, in financing and building, we sell and buy real estate contracts for individuals, discount, we help them finance projects. We help them finance homes. Mostly anything in financing."

She has been a real estate broker and actively engaged in business since 1937.

Plaintiff met Mrs. Nadreau and Mr. Hendrickson in January, 1953, when he purchased some property through them. The transaction leading to this action took place several days prior to February 25, 1953, on which day defendants gave plaintiff their promissory note for $5,500, due in eight months. By agreement, the note bears no interest.

Concerning the note of February 25, 1953, plaintiff testified as follows:

"They showed me a piece of property up on Boren and Broadway, a double corner, that their official people— artificial people, A. Lundberg, were going to build a store and shop. They showed me an earnest money signed by Lundberg Company, but I didn't have no glasses on and couldn't see it, but they told me what it was. . . . They showed me an earnest money agreement signed by A. Lundberg Company that they were going to build a store and shop. They asked me if I could invest $3000 to get this property zone, that they could double my investment, and give me a profit of $3000.

"We discussed this in their office several days, three four days, five, whatever it was, and they guaranteed that they

would give me a $3000 profit by giving me a note of $5500 and taking $500 for their commission."

Having received the note dated February 25, 1953, in exchange for $3,000 cash, plaintiff returned to Alaska. About eight months later, he returned to Seattle. He testified:

"After I got here, I went out and seen my peoples and friends, and one day I happened to be walking up on Boren Avenue and I noticed on this corner lot, nothing on it, so I went to their office and told them to see what's happened, and they told me the deal didn't go through.

"I told them they should have notified me and returned my money, and I would have returned the note. I asked them then, but they didn't have it."

October 24, 1953, defendants mailed plaintiff a renewal note for $5,500, due in eight months. It does not bear interest. Plaintiff's action is upon the renewal note.

Mrs. Nadreau, called by plaintiff as an adverse witness, admitted showing plaintiff the corner lot on Boren avenue and the Lundberg earnest money receipt; but she testified, "I don't recall just what I told him." In response to an inquiry of whether plaintiff was putting his money into an investment with defendants which might result in a profit, she replied, "That is right." However, plaintiff's $3,000 was used in defendants' business.

In *Hafer v. Spaeth*, 22 Wn. (2d) 378, 382, 156 P. (2d) 408 (1945), this court said:

"The essential elements of usury are: (1) a loan or forbearance, express or implied; (2) money or its equivalent constituting the subject matter of the loan or forbearance; (3) an understanding between the parties that the principal shall be repayable absolutely; (4) the exaction of something in excess of what is allowed by law for the use of the money loaned or for the benefit of the forbearance; and, in some jurisdictions, (5) an intent to exact more than the legal maximum for the loan or forbearance.

"To determine whether all these essential elements are present, the courts will look through the form of the transaction and consider its substance. If all the requisites are found to be present, the transaction will be condemned

as usurious, but, if any one or more of them are lacking, the parties cannot be charged with a usurious practice."

On the other hand, if the evidence discloses that the amount, over and above the actual cash advanced, represented anticipated profit to be realized from a particular transaction, it is not usury, for the transaction does not fall within the scope of the rule above cited. See: *Simpson v. C. P. Cox Corp.*, 167 Wash. 34, 8 P. (2d) 424 (1932).

After proper instructions by the court upon the applicable law, it was the province of the jury to weigh the facts and decide whether the promissory note was tainted with usury. It was error to sustain the challenge to the sufficiency of plaintiff's evidence, and the case must be reversed and remanded for a new trial.

Did the court err when it dismissed the action against the community of Mr. and Mrs. Nadreau?

The facts most favorable to plaintiff are these:

Mr. and Mrs. Nadreau have been married approximately twenty-five years, during which time they have lived together as husband and wife. She has been a real estate broker since 1937, actively engaged in the real estate, building, and finance business. Although Mr. Nadreau knew of his wife's business activities as a real estate broker for the nineteen years prior to trial, he took no part in it. Mrs. Nadreau testified that she used her earnings "for promoting building and programs, and building and buying and selling real estate," as well as paying her own living expenses. She testified that she and her husband "eat out all of the time"; that she pays for her own meals, clothing, trips, and automobile expenses—when she had an automobile. In 1946 or 1947, she made equal payments, with her husband, on the purchase of a home.

The statute (RCW 26.16.030) provides that property acquired after marriage by either husband or wife, or both, is community property. While the earnings of a wife, living separate from her husband, are her separate property (RCW 26.16.140; *Hokenson v. Hokenson*, 23 Wn.

(2d) 908, 162 P. (2d) 592 (1945)), moneys derived from her personal services, earned during coverture while living with her husband, are just as much community property as are the earnings of the husband. *Abbott v. Wetherby*, 6 Wash. 507, 512, 33 Pac. 1070, 36 Am. St. Rep. 176 (1893); *Marsh v. Fisher*, 69 Wash. 570, 125 Pac. 951 (1912); *Beakley v. Bremerton*, 5 Wn. (2d) 670, 674, 105 P. (2d) 40 (1940).

Under certain circumstances, husband and wife may agree that the earnings of each shall be separate property, but, at this point in the instant case, Mrs. Nadreau's testimony falls short of establishing an agreement with her husband that her earnings were her separate property. It is apparent that Mr. Nadreau and the community benefited, at least indirectly, from the moneys received by Mrs. Nadreau from her business activities. Her expenses for food, clothing, and trips, together with house payments, are certainly benefits to the community. *State v. Miller*, 32 Wn. (2d) 149, 201 P. (2d) 136 (1948).

"In two types of situations community liability may result from the wife's obligations: (1) transactions falling within the 'family expense' statute [RCW 26.20.010] which create three-way liability (separate-husband, separate-wife, and community), and (2) transactions by the wife for a community purpose which the husband either has authorized or ratified, or the community character of which he has estopped himself to deny. To avoid community liability after he acquires sufficient knowledge of the transaction, the husband must act promptly, but this prerequisite provides substantial protection against community liability from many acts of the wife." (p. 173) Comparative Studies in Community Property Law (La. State Univ. Press, 1955), The Community Property Law in Washington by Harry M. Cross.

The evidence now before us places Mrs. Nadreau's transaction with plaintiff in the second category of the above rule. *Fielding v. Ketler*, 86 Wash. 194, 149 Pac. 667 (1915) (money borrowed by wife to operate a hotel); *Lucci v. Lucci*, 2 Wn. (2d) 624, 99 P. (2d) 393 (1940) (money borrowed by wife to operate a grocery store); see *Conner v. Zanuzoski*, 36 Wn. (2d) 458, 218 P. (2d) 879 (1950). For

nineteen years, Mr. Nadreau knowingly permitted his wife to engage in business, the profits of which were community property. He cannot accept that portion of her activities which redound to his benefit and repudiate that which is against his interest.

The trial court erred when it dismissed the community of Mr. and Mrs. Nadreau from this action. The possible individual liability of Mr. Nadreau is not within the scope of the pleadings. But see *Lucci v. Lucci, supra.*

The judgment is reversed, and the case remanded for a new trial.

HILL, C. J., MALLERY, DONWORTH, and ROSELLINI, JJ., concur.

