[No. 35088.   Department One.   December 31, 1959.]

G. HOMER OSTIGUY, *Appellant*, v. A. F. FRANKE CONSTRUC-
TION, INC., *et al., Respondents.*[1]

[1]Reported in 347 P. (2d) 1049.

*Daniel B. Trefethen,* for appellant.

*McMahon & Webster* and *Ramon E. Brown,* for respondents.

DONWORTH, J.—Appellant brought this action to foreclose a real-property mortgage and a chattel mortgage held by him to secure the payment of a promissory note executed by respondents and delivered to appellant as security for a loan of $10,000, payable in monthly installments.

Respondents, by answer, admitted the transaction and

alleged as an affirmative defense that said loan was usurious and thus subject to the applicable statutory set-offs.

The action, being equitable, was tried to the court sitting without a jury. At the conclusion of the trial, the court rendered a memorandum opinion, made findings of fact and conclusions of law, and entered a judgment dismissing the action on the basis that the loan was usurious.

The case comes to us on appeal from that judgment, appellant setting forth fourteen assignments of error, twelve of which pertain to questions of law.

The principal issue involved in the trial of this case was factual and presented the question of whether or not a certain payment of $2,000, made by respondents to appellant's attorney, constituted usury. This issue was resolved by the trial court in its findings of fact Nos. 3 and 4, the material portions of which are as follows:

"That in Seattle, Washington, on or about the 26th day of August, 1955, defendants [respondents] were hard-pressed for money and attempted to borrow from various sources without success. That arrangements were worked out with the plaintiff [appellant] to borrow the sum of $10,000.00 from him at an interest rate of 12% per annum, with the explicit understanding that a $2000.00 bonus was to be paid for this loan. In consequence thereof, the defendants executed a mortgage note in the sum of $10,000.00. This note was secured by a real estate mortgage covering all real property interests that the defendants had at that time . . . In addition, the defendants executed a chattel mortgage covering all their interests and [in] personal property as additional security for advancement of the sum of $10,000.00. . . .

"In order to avoid the pitfalls of the Usury Statute of this jurisdiction, a plan was conceived whereby the defendants, who ostensibly retain[ed] the plaintiff's attorney, and pay [paid] him the sum of $2000.00 on a fee contract for legal services. This fee contract was entered into for the sole and explicit purpose of paying compensation for the loan above the maximum 12% interest rate; and was paid as a condition of getting the loan, and there is no question but what the plaintiff derived the benefit from this $2000.00 payment, since in fact no legal work was done and none was contemplated in fact to be done. The attorney was never asked to do a thing for the defendants and

the attorney never offered to do a thing for the defendants, and the minute the defendant fell behind on his note, the attorney acted against the person, who was his nominal client, during the period covered by the fee contract. The payment and receipt of this sum of $2000.00 constitutes a usurious exaction under the law. . . . "

The statute applicable to the matter before us is RCW 19.52.030, which reads as follows:

"If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void; but if in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the plaintiff shall only recover the principal, less the amount of interest accruing thereon at the rate contracted for, and the defendant shall recover costs; and *if interest shall have been paid, judgment shall be for the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest;* . . . " (Italics ours.)

It is undisputed that the balance remaining due on the principal at the time of trial was $5,621.27. The trial court, applying the statutory formula (italicized above), deducted from the unpaid principal (1) twice the amount of interest paid, and (2) the amount of all accrued and unpaid interest, which left an overpayment of $2,463.40 by respondents, with the result that nothing whatsoever was held to be due or owing to appellant.

Although we note an error of addition in the trial court's computations, it is harmless, since it does not affect the result, because there still would be an overpayment.

A considerable portion of appellant's brief is devoted to the contention that findings of fact Nos. 3 and 4 are contrary to the evidence.

There was a direct conflict in the testimony as to the purpose of the $2,000 payment made by respondents to appellant's attorney. Respondents testified to the effect that they were required to pay the $2,000 as a bonus in order to obtain from appellant the loan of $10,000, at 12 per cent interest, and that the bonus was paid to appellant's attor-

ney at the direction of appellant. Appellant denied this, as did his attorney, who was called as an adverse witness by respondents.

Appellant contended that the $2,000 was an advance retainer fee paid to appellant's attorney pursuant to a written contract between respondents and appellant's attorney, to which appellant was not a party.

The record discloses the following facts surrounding the execution of this so-called retainer contract, which we find most significant:

The $10,000 note, the two mortgage instruments given to secure it, and the alleged retainer contract are all dated the 26th of August, 1955, and they were all executed in the office of appellant's attorney on the same day. At the same time, respondents signed a promissory note whereby they promised payment of the $2,000 retainer fee to appellant's attorney on or before October 15, 1955. Although this note was executed on August 26, along with the other instruments, it is dated September 1, 1955. Prior to the negotiation of this loan, respondents and appellant's attorney were complete strangers, while appellant's attorney had served him in that capacity for approximately thirty-five years. Although respondents had their own attorney whom they customarily employed to handle their business affairs, appellant's attorney was retained to draft the note and mortgages involved herein at the express direction of appellant. Appellant's attorney charged $150 for these services, and this fee was paid by respondents.

Respondents were in the business of constructing low-priced homes for lot owners. Under the terms of the alleged retainer agreement, a copy of which was admitted in evidence, appellant's attorney was being retained to procure the necessary building permits to construct these homes and to render certain other legal services incidental to such building operations. Prior to the time of this agreement, respondents had always handled such matters personally without the services of an attorney.

Although it is undisputed that no services whatsoever were in fact rendered under this contract, no part of the

$2,000 retainer fee was ever tendered back to respondents. Appellant's attorney offered, as an explanation, the fact that respondents had never requested him to perform any services under the contract nor had they requested him to return the money.

The alleged fee of $2,000 was paid to appellant's attorney in two installments by checks signed by respondent wife. The first check, for $1,500, was dated September 15, 1955, and the second check, for $500, was dated October 15, 1955, which was the same date the first payment was made by respondents to appellant on the $10,000 note. Photostatic copies of the canceled checks are in evidence. Appearing at the bottom of the $500 check is the notation "Loan from H. G. Ostiguy." This check was made out and mailed to the attorney by Mrs. Franke after she had tried unsuccessfully to contact him at his office. She testified that she made the notation thereon to insure that appellant's attorney would know what the money was for, since she had not sent a letter of explanation with the check.

The alleged retainer agreement provides that the contract shall continue in effect from September 1, 1955, to January 1, 1957. Notwithstanding his accepting this retainer from respondents, appellant's attorney, on June 1, 1956 (while the agreement was still in effect), instituted this mortgage foreclosure action on behalf of appellant against respondents. Such conduct is more consistent with respondent's version of the loan transaction than with appellant's version.

■ We think the trial court very ably disposed of this matter in its memorandum opinion, from which we quote:

"Now, this fee contract: It is absolutely unthinkable to me that any man in his right mind would pay $2,000 for legal services for which he had absolutely no use, and at a time when he was in serious financial difficulty, and actually pay the $2,000. That is the astounding thing. That came out first. Now all this elaborate window dressing, and it is no more than that, in the fee contract, that . . . [appellant's attorney] was going to spend hours and hours of time over here in the City Hall getting building permits and interviewing the Health Department and so forth, it

is something that I never heard of in my life and I just don't believe it.

"I think it is obviously a contract drawn up for the purpose of getting around the usury statute. I think Mr. Ostiguy knew that he couldn't get any more than 12% interest and if he was going to get this additional $2,000 it had to be by virtue of some sort of contract. It couldn't very well be a gift. Nobody would ever believe Mr. Franke was going to give him this $2,000 and if it were done in some fashion that appeared to be too transparent, then he would lose his money and so this idea of a contract for attorney's services was conceived."

■ The fact that there is no evidence that appellant directly benefited from or received any portion of the $2,000 paid to his attorney does not relieve appellant of the charge of usury. In *Ridgeway v. Davenport*, 37 Wash. 134, 79 Pac. 606 (1905), we held that the fact that the lender did not derive any benefit from the usurious transaction was immaterial since, under the usury statute, the acts of the lender's agent in contracting for and receiving the usurious interest were attributable to the lender. The same situation exists here. The trial court found that the fee contract constituted a bonus for the use of $10,000. Under this finding, appellant's attorney must be deemed the agent of appellant with regard to this $2,000 payment. The latter portion of RCW 19.52.030 provides:

" . . . where there is illegal interest contracted for by the transaction of any agent the principal shall be held thereby to the same extent as though he had acted in person."

Thus, the situation is the same as though appellant had *directly* contracted for and received this $2,000 bonus.

■ The trial court saw and heard the witnesses regarding the principal issue of fact concerning which the testimony was in direct conflict. It resolved that issue in favor of respondents. See *McDonald v. Wockner*, 44 Wn. (2d) 261, 267 P. (2d) 97 (1954), and *West v. Stanfield*, 48 Wn. (2d) 55, 290 P. (2d) 704 (1955). Since there was substantial evidence to support the trial court's findings on this issue, they will be accepted as verities by this court. *Thorndike v.*

*Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959).

The remaining assignments on which appellant relies for a reversal of the trial court's judgment require rather brief discussion.

Appellant argues that, even though such $2,000 payment be classed as usurious, there is no evidence that respondents had paid or tendered the balance of the principal of the loan amounting to $5,621.27, together with the interest thereon at the legal rate of 12 per cent, and that, in the absence of such payment or tender of payment, there can be no usury as a matter of law. It is asserted that such a holding is required by the equitable maxim that he who seeks equity must do equity.

■ The rule contended for by appellant applies only in those situations where the borrower initiates the action seeking affirmative equitable relief from a usurious contract. In a case such as this, where the borrower raises the issue of usury by way of defense to an action on the contract instituted by the lender, RCW 19.52.030 applies and is controlling. This exact distinction is expressly pointed out in *Goodwin Co. v. National Discount Corp.,* 5 Wn. (2d) 521, 105 P. (2d) 805 (1940), the very case which appellant relies upon so heavily in support of his position.

Appellant contends that the trial court erred in not holding that respondent's answer was insufficient to raise the defense of usury.

■ Appellant should have raised this point before the trial by demurrer to the affirmative defenses in respondent's answer instead of filing a reply denying the allegations contained therein. Furthermore, at no time did appellant request a bill of particulars or claim that he was surprised or misled by any of respondents' evidence. Nor did appellant request a continuance for any reason. Under these circumstances, we do not feel that appellant's contention is well taken.

■ Appellant next contends that the voluntary payment of the $2,000 by respondents waived any claim of usury. RCW 19.52.030 expressly forecloses any such con-

tention by providing that if the interest has been *paid* the usurious penalties still apply. Furthermore, this court has gone so far as to hold that usury cannot be waived by an agreement between the parties as such would be contrary to public policy. *Auve v. Fagnant,* 16 Wn. (2d) 669, 134 P. (2d) 454 (1943), and cases cited therein.

It is further argued that usury cannot be proved by parol evidence.

■ In *Auve v. Fagnant, supra,* this court quoted from 82 A.L.R. 1199 as follows:

" . . . It is a general rule that, for the purpose of showing usury in a written contract, parol or extrinsic evidence is admissible, the parol-evidence rule not being applicable to such a situation. (As pointed out in some of the cases, and as subsequently shown herein, such evidence is admissible notwithstanding it may directly contradict the terms of the writing.)"

See, also *Cissna Loan Co. v. Gawley,* 87 Wash. 438, 151 Pac. 792 (1915).

It is next asserted that, since respondents did not specify that the $2,000 payment be credited as interest upon the loan, appellant cannot be held to have collected or received such payment as usurious interest.

■ This contention is unsupportable. In *Home Savings & Loan Ass'n v. Sanitary Fish Co.,* 156 Wash. 80, 286 Pac. 76 (1930), we stated:

" . . . If the contract as and when made was in fact usurious, plaintiffs, upon that fact appearing under proper pleadings and by the preponderance of competent and sufficient evidence, are, upon the record in this case, liable to the penalties provided by statute.

" . . .

"In the later case of *Inland Trading Co. v. Edgecombe,* 57 Wash. 257, 106 Pac. 768, this court held that a $500 note executed by the debtor constituted a usurious exaction and, the same having been paid, should be treated as interest on a $960 note (the note sued upon) and, under the statute must be doubled and deducted from the note upon which the action was based, completely extinguishing the debt."

Finally it is contended that the trial court erred in not admitting Exhibit 6 (the bankruptcy court proceedings between the parties hereto) for the purpose of considering the bankruptcy court's decision as a factor in determining the truthfulness of the respective parties' contentions in this case.

■ The only question involved in the bankruptcy proceedings was one of fraud. This was *not* an issue in the present case, and we fail to see how that court's decision could have any bearing whatsoever on the contentions of the parties here.

Finding no merit in appellant's assignments of error, the judgment of the trial court is affirmed. Respondents shall recover their costs in this court with the exception that no costs shall be taxed for the preparation of their typewritten memorandum of additional authorities, which was stricken from the record pursuant to appellant's motion.

WEAVER, C. J., MALLERY, OTT, and HUNTER, JJ., concur.