[No. 36940. En Banc. October 29, 1964.]

HANS M. BUSK, *Respondent,* v. MAURICE A. HOARD *et al.,* *Appellants,* BRAZIER CONSTRUCTION COMPANY *et al., Defendants.**

*Reported in 396 P. (2d) 171.

*Malcolm L. Edwards* (of *Culp, Dwyer, Guterson & Edwards*), for appellants.

*Flanders, Flanders & Trolson,* for respondent.

HALE, J.—Usury has long been recognized as a social and economic evil affecting not only the parties to the transaction but society in general. Being widely regarded thus and condemned by law as well, it is frequently hidden by legalistic devices and cloaked in dissimulation. When, therefore, usury is claimed as a defense, the courts must, after looking beneath the surface of a transaction, examine it in all its ramifications to see if the defense is valid. In this suit to foreclose a real-estate mortgage, the answer sets up usury as a defense, but the basic problem is one of agency.

Maurice A. and Clara Hoard, defendants, borrowed money on their real estate through the Stevens-Norton Company

of Seattle, a company said to be a mortgage brokerage. The borrowed money came from Hans M. Busk, plaintiff, who made the investment through the Stevens-Norton Company. If Stevens-Norton Company acted as agent for Busk, the lender, as well as for Hoards, the borrowers, the arithmetic of the transaction, coupled with the express statutory policy on agency, makes it usurious under RCW 19.52.030, which provides:

"If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void; but if in any action on such contract proof be made that greater rate of interest has been directly or indirectly contracted for or taken or reserved, the plaintiff shall only recover the principal, less the amount of interest accruing thereon at the rate contracted for, and the defendant shall recover costs; and if interest shall have been paid, judgment shall be for the principal less twice the amount of the interest paid, and less the amount of all accrued and unpaid interest; and the acts and dealings of an agent in loaning money shall bind the principal, and in all cases where there is illegal interest contracted for by the transaction of any agent the principal shall be held thereby to the same extent as though he had acted in person. *And where the same person acts as agent of the borrower and lender, he shall be deemed the agent of the lender for the purposes of this act.*" (Italics ours.)

Authority to look behind the outer facade of the transaction and into the details of the arrangement (*Clausing v. Virginia Lee Homes, Inc.*, 62 Wn. (2d) 771, 384 P. (2d) 644) is found in the statute fixing the maximum lawful rate of interest at 12 per cent in RCW 19.52.020:

"Any rate of interest not exceeding twelve percent per annum agreed to in writing by the parties to the contract, shall be legal, and no person shall directly or indirectly take or receive in money, goods or thing in action, or in any other way, any greater interest, sum or value for the loan or forbearance of any money, goods or thing in action than twelve percent per annum."

Both Busk, the lender, and Stevens-Norton Company, the go-between, categorically denied the existence of any agency relationship between them, and the trial court en-

tered a judgment of foreclosure for the full amount of the mortgage, specifically finding no agency in its finding of fact No. 2, which reads, in part:

"That the aforesaid Stevens Norton, Inc., was not acting as the agent of the plaintiff at any time prior, during, or subsequent to the transaction between the plaintiff and the defendants Hoard as hereinbefore set forth."

Since agency is largely a legal concept and describes a legal relationship between the parties to it, we perceive the finding of nonagency to be largely a conclusion of law, though recognizing it may also be said to be a mixture of law and fact. Thus, though the concept or idea of agency be one of law, its existence depends upon factual elements. Restatement, Agency (2d) § 1 Comment (1b). The Restatement declares this principle when it says:

"Agency is a legal concept which depends upon the existence of required factual elements: . . . The relation which the law calls agency does not depend upon the intent of the parties to create it, nor their belief that they have done so. To constitute the relation, there must be an agreement, but not necessarily a contract, between the parties; if the agreement results in the factual relation between them to which are attached the legal consequences of agency, *an agency exists although the parties did not call it agency and did not intend the legal consequences of the relation to follow.* Thus, when one who asks a friend to do a slight service for him, such as to return for credit goods recently purchased from a store, neither one may have any realization that they are creating an agency relation or be aware of the legal obligations which result from performance of the service. . . ." (Italics ours.)

This court said much the same thing in *Moore v. Blackburn,* 67 Wash. 117, 120 Pac. 875:

" . . . Agency is a fact to be determined by the peculiar circumstances of each case; so that there are many cases holding that the broker who acts as intermediary between the parties is, under some conditions, the agent of one party, and under other conditions, the agent of the other party. It seems to us, however, that the problem must be solved by determining under whose direction the broker was acting. . . ."

In *Edmonds v. Altman,* 89 Wash. 4, 153 Pac. 1082, we extended this idea to an untenable extreme in holding that, when lender and borrower had mere contact through a loan broker, without more, the broker became the agent of each as a matter of law. But *Clemson v. Best,* 174 Wash. 601, 25 P. (2d) 1032, overruled *Edmonds v. Altman, supra,* and reverted to the rule in *Moore v. Blackburn, supra.* It prefaced *McCall v. Smith,* 184 Wash. 615, 52 P. (2d) 338, which says:

" . . . Whether a broker is to be regarded as acting for the borrower, for the lender, or for both, depends on all the facts and circumstances of the particular case, and no one fact, seized from its setting, can be said to be conclusive or controlling under any and all circumstances."

Although the findings of fact are held to be verities when supported by substantial evidence, and the conclusions of law drawn therefrom by the learned trial judge are worthy of the greatest consideration, we have noted a number of events established from undisputed evidence which warrant a detailed examination of the facts. From this unconflicting evidence, we see what happened.

Defendants urgently needed money; they were willing to pay higher than the prevailing rate of interest for it. On other occasions they had borrowed money through the Stevens-Norton Company, a firm whose officers describe its operations as that of a mortgage broker. They expected to pay the broker a commission for its service, having done so in the past. April 14, 1960, Clara Hoard, acting for her husband under a power of attorney—he was an invalid—signed a written application to Stevens-Norton Company for a $7,500 loan, payable at $200 per month, in which they agreed to pay the company a 20 per cent commission, a $50 appraisal fee, and to pay for title insurance for a first lien mortgage.

The facts, upon which appellants urge that an agency between lender and broker depends, come, as we have said, from undisputed evidence. Mr. Busk read the Stevens-Norton advertisements running in the Seattle Times offering investments in real-estate mortgages and contracts. He

was a carpenter and had never before invested in real-estate mortgages or liens or engaged in other real-estate transactions. He had little or no knowledge of mortgage paper or the language essential to create a binding fore-closable contract. He had never traded in stocks, bonds, or other securities, and had no prior acquaintance with the Stevens-Norton Company or with the defendants Hoard. Prompted by the advertisement and in the hope of making an investment, Busk went to the Stevens-Norton Company offices in the Dexter Horton Building, Seattle.

Larry Stevens, vice-president of the company, showed Busk the papers pertaining to a number of mortgages and contracts, referred to as "listings," and exhibited some pho-tographs of real estate concerning them. Larry Stevens told Busk that his company would, without charge, collect the mortgage payments, keep records of principal and in-terest, and make remittances, and, prior to making the investment, would check to see that the title was free of liens and procure title insurance. He told Busk that the Hoards owned their own home, operated a business and were responsible people, and he appraised the property to be mortgaged at $12,500. On this occasion, Busk agreed to make a $7,500 loan to the Hoards on a note and mortgage and thereupon handed to Mr. Stevens his check for $100. He returned to the Stevens-Norton Company office one week later, on April 21st, and delivered the remaining $7,400.

Coincident with receipt of the $7,400, the Stevens-Norton Company made a formal business record of this transaction by opening an 11-column ledger card on which to record payments, interest, taxes and other pertinent information, and subsequently entered in it four separate rows of entries relating to payments on July 1st and July 28th.

Mr. Busk, the lender, never saw the property on which he was lending his money, nor met his debtors, the Hoards. Stevens-Norton Company exercised dominion over the mortgage paper, placing a message on it to the county auditor directing its return after recordation to their offices in the Dexter Horton Building; and there the instruments

were kept. Noteworthy, too, on the question of agency is the fact that, while the note and mortgage both bear the date of April 21, 1960, as the date of execution—the date that Busk delivered the $7,400 to Stevens-Norton Company —the acknowledgment on the mortgage and the date of placing the notarial seal thereon is April 25, 1960, four days later. This raises an inference not rebutted by any evidence that the mortgage paper had not been completely executed when Busk turned the $7,400 over to Stevens-Norton Company, and that he impliedly constituted the company his agent to provide him with a binding, legally-sufficient, mortgage contract.

Later, when the Hoards became delinquent in their payments, Stevens-Norton sent them a notice of foreclosure which seems to imply a continuing agency. It commenced with these words:

"We wish to advise you that it will be necessary to turn over to our attorney for foreclosure the mortgage held by our client on property legally described as: . . ."

and closes with the words:

"You are further notified that failure to pay the above delinquencies as stated or failure to make any future payments on the due date hereafter will result in our immediately turning this mortgage over to our attorney for foreclosure."

While both Mr. Busk and Larry Stevens stoutly denied any agency between them, we cannot overlook the responsibilities placed upon and assumed by Stevens-Norton Company, as indicated by the following direct examination of Larry Stevens, its vice-president:

"A. When he came in to invest this money I submitted to him several investments we had available and at that time we agreed we would collect the account for him. Q. Did you give him information relative to these various investments which you were showing him? A. Yes. Q. And did you advise him about the relative credit merits of the people who were borrowing? A. I would answer any question that he asked me, and if he had asked me the question at that time, I had the information available for him. I don't recall if he asked any particular questions. I think mainly it was the security involved that was the main issue.

Q. And you supplied him the information about that? A. Yes. Q. Did you at his request undertake any further study of the property other than that you had already made when you first talked to him? A. We would follow through with our plan naturally. The next thing on the property is, we get it clear of liens and so forth before we can have a title insurance issued to Mr. Busk as a first mortgage. Q. Did you obtain any title insurance for him? A. We obtained the title insurance through a title company for his benefit."

And we are mindful of the testimony given by Earl W. Stevens, president of Stevens-Norton Company, who described in general his company's methods of operation. He acknowledged, though disclaiming any knowledge of an agency relationship in this case, that, in some instances, the company did act for and on behalf of others in making and servicing investments. He said that his company on occasion gave investment advice to prospective investors, appraised property, and operated an escrow department for the handling of an investor's money. The escrow department protected the investor by conserving his money until the investment broker had cleared any title defects and provided title insurance.

He testified that his company prepared the legal instruments by which debts are evidenced and security given. The company followed this practice here when it prepared the note and the mortgage upon which Busk advanced his money—thereby assuming the functions of an agent in preparing a complicated legal instrument for a client. At the time of the instant transaction, he said, they were using forms supplied them by Puget Sound Title Insurance Company, but since then Stevens-Norton Company had had its own forms for mortgages and notes printed.

The inexorable force of these combined facts creates an agency between Busk, the lender, and Stevens-Norton Company, the broker, as a matter of law. Busk relied and acted upon the advice given and information furnished him by Stevens-Norton Company in selecting the particular individuals to whom and the property upon which he would lend his money. He relied upon the broker's

advice that the property was worth $12,500 and that the Hoards owned their own home and operated a business. He made the Stevens-Norton Company his agent to check and clear the title, to procure title insurance for him, and to prepare written instruments in the form of a note and mortgage, legally sufficient to give him a cause of action for foreclosure and recovery in case of default. He made the broker his agent to transmit the $7,500 to the borrower, and to record the mortgage as well, and to continue as his agent in collecting the payments specified. He made Stevens-Norton his agent to keep records of account, making proper allocations to principal and interest, and to remit the collections to him. He impliedly designated the broker his agent to retain possession of the mortgage paper by having the same returned to the broker's office from the county auditor.

Through their actions, conduct and words, the parties may bring into existence an implied agency, despite their intention that this not come to pass. But, being implied in either law or fact, it is no less a true agency and carries with it all of the legal responsibilities arising from an agency created by explicit agreement. *Turnbull v. Shelton,* 47 Wn. (2d) 70, 286 P. (2d) 676; *Freeman v. Navarre,* 47 Wn. (2d) 760, 289 P. (2d) 1015.

Discerning the Stevens-Norton Company to be the lender's agent, we are next confronted by the lender's want of notice or knowledge of the usury. Well established rules governing notice to or knowledge by an agent seem to solve this problem readily. That Stevens-Norton Company, under its agreement with the borrowers, withheld $1,500 as a commission from the $7,500 loaned, without notice to or knowledge by the lender, does not relieve the lender of the implications of usury, for the knowledge of the agent must be attributed to his principal. This court has said as much on many occasions.

Knowledge or notice by or to the agent is imputed to his principal (*Chase v. Beard,* 55 Wn. (2d) 58, 346 P. (2d) 315; *Rocky Mountain Fire & Cas. Co. v. Rose,* 62 Wn. (2d) 896, 385 P. (2d) 45); and the knowledge had by an

agent will, therefore, bind his principal (*Miller v. United Pac. Cas. Ins. Co.*, 187 Wash. 629, 60 P. (2d) 714; *American Fidelity & Cas. Co. v. Backstrom*, 47 Wn. (2d) 77, 287 P. (2d) 124); and, in most instances, the time, place or manner in which the agent obtains the knowledge is immaterial as far as charging the principal with it is concerned. Restatement, Agency (2d) § 276. Nor is benefit to the lender of any great moment; the fact that the lender derives no benefit from a usurious transaction is immaterial. *Ostiguy v. A. F. Franke Constr., Inc.*, 55 Wn. (2d) 350, 347 P. (2d) 1049, 81 A.L.R. (2d) 1271.

 Under these rules, Busk is held to have known that, of the $7,500 which he loaned the Hoards through their mutual agent, the borrowers were to receive only $6,000, but bound themselves to repay to him the full amount ($7,500) at 10 per cent interest. He thus became party to a usurious contract, for the $1,500 withheld by his agent when added to the 10 per cent interest contracted for on the gross amount to be repaid pushes the interest rate far beyond the maximum 12 per cent. The law will look behind subterfuge, devices and evasions by which the real rate of interest contracted for or reserved may be hidden. *Home Sav. & Loan Ass'n v. Sanitary Fish Co.*, 156 Wash. 80, 286 Pac. 76; *Ostiguy v. A. F. Franke Constr., Inc., supra; Clausing v. Virginia Lee Homes, Inc., supra.* Though not conclusive in all instances, the most reliable test for usury, we believe, is to compare the amount of money actually received with the amount of money the borrower is obliged to repay, adding thereto whatever additional charges are imposed upon the borrower for the use of the money.

 The mortgage transaction being usurious, we are bound to apply the penalties to it fixed by RCW 19.52.030. Respondent's mathematical interpolation of this statute, as set forth in his brief, we think, quite accurately expresses the intendments of the statute, so with slight exception we accept his formula. From the $6,000 net proceeds of the loan received by the appellants, there should be deducted in penalty the $1,500 commission for this usurious item,

leaving $4,500 as a balance. From this $4,500, there should next be subtracted the interest actually paid, *i.e.,* the sum of $369.04, and a like amount as penalty, making a total deduction of $738.08 from the previous balance of $4,500. This leaves a principal balance of $3,761.92 from the amount actually received by the borrower. Then, from this $3,761.92, we should deduct the amount of all unpaid interest calculated at the agreed rate. In this case, since the unpaid interest will be computed after deducting the first payments to principal, we have unpaid interest at 10 per cent on $5,786.88 from October 21, 1960, to not the date of final judgment but to the day the remittitur goes down. *Clausing v. Virginia Lee Homes, Inc., supra.* The amount remaining after deducting this last item shall be the amount of the judgment of foreclosure together with such costs as may be taxable.

The judgment is reversed, and is to be entered in accordance with this opinion, appellants to recover costs on appeal.

FINLEY and WEAVER, JJ., concur.

ROSELLINI and HAMILTON, JJ., concur in the result.

OTT, C. J. (dissenting)—Did Maurice A. Hoard and Clara Hoard, his wife, enter into a usurious loan agreement with Hans M. Busk? The trial court, after weighing the evidence, answered the query in the negative. The majority, after weighing or totally disregarding the evidence, answer the query in the affirmative. I believe the judgment of the trial court should be affirmed for the following reasons:

The usury statutes provide that, if a rate of interest in excess of 12 per cent is contracted for or received or reserved, the contract shall not be void, but the parties thereto will be subject to certain statutory penalties. RCW 19.52-.030 provides in part:

" . . . and the acts and dealings of an agent *in loaning money* shall bind the principal, and *in all cases where there is illegal interest contracted for* by the transaction of any agent the principal shall be held thereby to the same extent as though he had acted in person. And where the

same person acts as agent of the borrower and lender, he shall be deemed the agent of the lender for the purposes of this act." (Italics mine.)

The evidence established that Stevens-Norton, Inc., was not acting for Hans M. Busk in any capacity on April 14, 1960. On that date, Maurice A. Hoard and Clara Hoard, his wife, entered into a brokerage contract with Stevens-Norton Inc., which provided, *inter alia:*

"You are authorize [*sic*] to procure for me a loan of $7,500.00 payable at $200.00 or more a month including interest at 10% per annum. . . .

"I agree to pay you $20% plus 50.00 App. Fee pd—commission and furnish title insurance showing the mortgage to be first lien, free of all taxes and assessments, upon the property, and pay $costs for examination thereof. . . .

"In the event that this application for a loan is accepted, and I refuse to sign Note and Mortgage, or desire to cancel this application for loan, then I promise to pay you the commission herein agreed, as liquidated damages, also costs for recording to perfect title."

Hans M. Busk, a carpenter by trade, had never before made a loan to anyone. There is not a scintilla of evidence that Stevens-Norton, Inc., was acting as an agent *"in loaning money"* for Busk at the time the agreement was entered into between the Hoards and Stevens-Norton, Inc. Yet, it is the payment by the Hoards of the brokerage fee to Stevens-Norton, Inc., in compliance with the April 14th agreement, which the majority hold makes the note and mortgage between the Hoards and Busk a usurious contract. To arrive at this conclusion, the majority hold, in effect, (a) that the payment of the brokerage fee was in fact payment of interest, and (b) that Stevens-Norton, Inc., in obtaining this brokerage contract, was acting as agent for Busk, and that the agent's knowledge of the usury (the brokerage fee) was knowledge to Busk.

As to (a), both the Hoards and officers of Stevens-Norton, Inc., testified that the brokerage fee was paid by the Hoards to Stevens-Norton, Inc., for services rendered. The written contract quoted above is in conformity with the

intention and agreement of the parties. In this brokerage contract, the use of money was not involved; hence, no interest was to be paid by the Hoards to Stevens-Norton, Inc., or vice versa. In *Colagrossi v. Hendrickson,* 50 Wn. (2d) 266, 271, 310 P. (2d) 1072 (1957), we said: ". . . it was the province of the jury to weigh the facts and decide whether the promissory note was tainted with usury." Here, the trial court, as the trier of the facts, found that the transactions in question did not constitute usury.

As to (b), that knowledge of the agent for certain purposes imputes knowledge to the principal is a well-established rule of law. The rule, however, does not apply where, as here, there is no evidence that on April 14, 1960, Stevens-Norton, Inc., was acting in any capacity for Busk. In this regard, the trial court's finding was as follows:

"That the aforesaid Stevens Norton, Inc., was not acting as the agent of the plaintiff at any time prior, during, or subsequent to the transaction between the plaintiff and the defendants Hoard as hereinbefore set forth."

In *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 575, 343 P. (2d) 183 (1959), we said:

". . . If we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court. . . ."

Again, in *Malstrom v. Kalland,* 62 Wn. (2d) 732, 735, 384 P. (2d) 613 (1963), this court said:

"We do not conceive that the presence or absence of conflicting testimony minimizes or enlarges the scope of appellate review. If there is competent evidence in the record (whether it be conflicting or undisputed), to support the findings of fact of the trial court, we cannot disturb them (see *Thorndike v. Hesperian Orchards, Inc., supra*) except as provided by RCW 4.44.060, . . ."

Usury is an affirmative defense. The burden of proof rests upon the one who asserts the transaction to be usurious. *McCall v. Smith,* 184 Wash. 615, 622, 52 P. (2d) 338 (1935), and cases cited. The appellants did not meet this burden.

The majority hold that the agency between Stevens-Norton, Inc., the Hoards, and Busk is established by virtue of RCW 19.52.030, which provides in part:

". . . And where the same person acts as agent of the borrower and lender, he shall be *deemed* the agent of the lender for the purposes of this act." (Italics mine.)

Before the statute becomes applicable, dual agency must be established by the common-law principles of agency. There is no statutory presumption that a dual agency exists; nor does the statute prescribe a magic formula for determining whether a dual agency has been established. In the instant case, agency between the borrower and the broker was admitted. Such admission alone does not invoke the statute which, by its terms, requires proof of a dual agency. Can we say, as a matter of law, that, by the application of the common-law principles, the broker was also the agent of the lender in procuring the loan?

In *Moore v. Blackburn,* 67 Wash. 117, 119, 120 Pac. 875 (1912), we said:

". . . Agency is a fact to be determined by the peculiar circumstances of each case; so that there are many cases holding that the broker who acts as intermediary between the parties is, under some conditions, the agent of one party, and under other conditions, the agent of the other party. It seems to us, however, that the problem must be solved by determining under whose direction the broker was acting. . . ."

In *Clemson v. Best,* 174 Wash. 601, 604, 25 P. (2d) 1032 (1933), we said:

"Nor do we think that the lender makes the broker *his* agent by the mere fact that he turns the money over to the broker to be transmitted to the borrower, and accepts a note and mortgage in which he is designated as payee and mortgagee. These are facts and circumstances which should be taken into consideration in determining whose agent the broker is, but in neither case are they conclusive."

In *McCall v. Smith, supra,* we said, p. 622:

". . . Whether a broker is to be regarded as acting for the borrower, for the lender, or for both, depends on

all the facts and circumstances of the particular case, and no one fact, seized from its setting, can be said to be conclusive or controlling under any and all circumstances."

The relationship created when Busk entered the offices of Stevens-Norton, Inc., after reading its advertisement in the newspaper, is tantamount to that between a merchant who advertises his wares for sale, and the customer who selects and purchases one of the products offered. In such merchant-customer transactions, the merchant is in no legal sense the buyer's agent in contracting for the *procurement of the products being offered for sale*. It is obvious that the customer's reliance upon the merchant's glowing representations as to the soundness of the investment falls far short of proving agency, as a matter of law, by the application of common-law principles.

In the instant case, Stevens-Norton, Inc., had contracted to procure the loans before the customer Busk selected and purchased one of those offered. The fact that, after the loan had been procured, the broker agreed to furnish collection and related services for the lender does not establish an agency, as a matter of law, for the purpose of "loaning money." The 10 per cent note and mortgage from the Hoards to Busk, for which Busk paid in full to the Hoards' agent, was admittedly not a usurious loan on its face. There was no "illegal interest contracted for" between the Hoards and Busk. Busk knew nothing of the brokerage agreement between the Hoards and Stevens-Norton, Inc. The evidence is conclusive that Busk sought and intended to purchase a 10 per cent loan. One of the elements of usury on the part of the lender is an *unlawful intent* to do that which is forbidden by law. *Colagrossi v. Hendrickson*, 50 Wn. (2d) 266, 270, 310 P. (2d) 1072 (1957), and case cited; *Washington Fire Ins. Co. v. Maple Valley Lbr. Co.*, 77 Wash. 686, 692, 138 Pac. 553 (1914).

Usury statutes are quasi-penal in nature. Contracts are not declared usurious in the absence of a manifest showing of intent on the part of the parties to engage in a usurious transaction. *Tacoma Hotel Inc., v. Morrison & Co.*, 193 Wash. 134, 141, 74 P. (2d) 1003 (1938). A contract will not be

struck down as usurious, if it can be sustained upon any legal hypothesis. *Simpson v. C. P. Cox Corp.,* 167 Wash. 34, 37, 8 P. (2d) 424 (1932).

The trial court observed that the brokerage agreement between the Hoards and Stevens-Norton, Inc., appeared to be fraudulent. However, its validity was not challenged in the trial court and, for the purposes of this appeal, it is a lawful contract. Brokerage agreements for listings and commissions for loans have long been approved. *Calvin Philips & Co. v. Langlow,* 55 Wash. 385, 104 Pac. 610 (1909). The brokerage contract between the Hoards and Stevens-Norton, Inc., was not usurious or tainted with usury, because it was not " . . . the exaction of something in excess of what is allowed by law for *the use of the money . . .*" (Italics mine.) *Hafer v. Spaeth,* 22 Wn. (2d) 378, 383, 156 P. (2d) 408 (1945). The brokerage contract was an agreement to pay a specified sum for the performance of a service, not for the use of money.

In 55 Am. Jur., Usury § 71, p. 373, the rule is stated as follows:

"A lender cannot be charged with usury on account of any commission or bonus paid by the borrower to his own agent or to an independent broker for services in negotiating or procuring a loan, even in jurisdictions expressly forbidding additional charges. And although the agent may act for the lender in other matters, or in some respect in connection with the loan in question, *if it is clear that in procuring the loan he was acting as the agent of the borrower, a commission paid him for his services in the latter capacity will not constitute usury. . . .*" (Italics mine.)

Accord, 52 A.L.R. (2d) 710.

The majority predicate the finding of agency, as a matter of law, upon five items of service which the broker offered to perform for Busk. Stevens-Norton, Inc., was directly interested in earning its $1,500 brokerage commission from the Hoards. The trial court, in holding that no agency existed, could well have found as a fact that Stevens-Norton, Inc., voluntarily and gratuitously, offered to perform these services for Busk solely as an inducement to the buyer or

investor to purchase a "product" which the broker had for sale.

Applying the rule that a contract will not be struck down as being usurious, if it can be sustained upon any legal hypothesis, it is more consistent to hold that Stevens-Norton, Inc., performed these services gratuitously or was compensated therefor by the brokerage commission, than it is to hold that Busk was receiving a financial benefit from the services; hence, had *knowingly* and *intentionally* executed a usurious contract.

The legislature has not seen fit to exercise its police power to license or regulate these brokerage activities. The enactment of proper legislation in this field is solely a function of the legislature. It is not the province of the courts to interpret and apply the general usury statutes so as to police this field of business activity.

Finally, it seems to me unconscionable that the conduct of a borrower who, by subterfuge and deceit, has been unjustly enriched at the expense of an innocent lender should receive the sanction of this or any appellate court. Here, a borrower knowingly and intentionally entered into a written agreement to pay a broker an exorbitant fee for enticing a lender to loan his money to the borrower upon receipt of a legal 10 per cent note and mortgage. The brokerage agreement was intentionally and surreptitiously withheld from the knowledge of the lender until after default. When he sought to foreclose his mortgage, he was confronted with an affirmative defense of usury, predicated upon the brokerage fee as a cost for the use of money, and a contention that the broker was the agent of the *lender* in the procurement of this allegedly usurious loan. The trial court found that the evidence did not establish either agency or usury. The majority reverse the trial court, and hold that agency was established as a matter of law. Agency alone does not render a loan usurious. The *majority rule* is stated in 52 A.L.R. (2d) 737 as follows:

"Although there is some disagreement, it is generally held that a loan is not rendered usurious by the *lender's agent* charging the borrower a commission or bonus in

excess of the maximum legal rate of interest for procuring the loan, where such charge is made for the *agent's own benefit* and is *without the lender's knowledge* or consent, either express or implied, and is *not ratified or shared in by the lender.*" (Italics mine.)

If we assume that Stevens-Norton, Inc., was Busk's agent, the penalties for usury do not apply to Busk where, as here, (1) the charge was made for the sole benefit of Stevens-Norton, Inc., (2) the deduction of its commission from the loan was made by the broker without the knowledge or consent of Busk, and (3) Busk neither ratified nor shared in the broker's commission.

For the reasons stated, the judgment of the trial court should be affirmed.

HUNTER, J., concurs with OTT, C. J.

HILL and DONWORTH, JJ., concur in the result of the dissent.

January 4, 1965. Petition for rehearing denied.